52 P.3d 472 (2002)
147 Wash.2d 114
Jeff KAMLA and Lois Kamla, husband and wife, Petitioners,
v.
The SPACE NEEDLE CORPORATION, a Washington corporation, Respondent.
No. 70966-1.
Supreme Court of Washington, En Banc.
Argued November 27, 2001.
Decided August 15, 2002.
*473 Messina Law Firm, Stephen Bulzomi, David A. Bufalini, Tacoma, for Petitioners.
Johnson & Martens P.S., Robert L. Christie, Seattle, for Respondent.
Debra Stephens, Bryan Harteniaux, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
JOHNSON, J.
This case involves a personal injury action brought against a jobsite owner by an injured employee of a contractor. The injured employee argued the jobsite owner owed him a common law duty of care based on the jobsite owner's alleged retained control over the manner in which the contractor completed the job. The injured employee further argued the jobsite owner owed him a statutory duty of care under the Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW. Finally, the injured employee *474 argued the jobsite owner owed him a common law duty of care based on the jobsite owner's status as landowner and the injured employee's status as invitee. The trial court dismissed the claims on summary judgment.
The Court of Appeals affirmed the trial court's dismissal of the statutory and common law retained control claims but reversed the trial court's determination on the common law landowner/invitee claim. We granted the injured employee's petition for review and the jobsite owner's cross-petition for review. We affirm in part and reverse in part. We affirm the Court of Appeals on the statutory and common law retained control claims and reverse the Court of Appeals on the common law landowner/invitee claim.

FACTS
The Space Needle Corporation (Space Needle), the jobsite and landowner,[1] hired Pyro-Spectaculars (Pyro), the contractor, to install a New Year's Eve fireworks display at the Space Needle. On December 30, 1997, Jeff Kamla was installing fireworks on the 200-foot level of the Space Needle. The 200-foot level is an open-core hexagonal platform through which three elevators pass. After arriving on the 200-foot level, Kamla attached his safety line and began moving around the platform. As he did, he dragged his safety line across an open elevator shaft. The elevator traveled down the shaft through the 200 foot level and snagged Kamla's safety line, dragging him through the elevator shaft and injuring him.
Kamla filed suit against Space Needle, alleging it breached common law and statutory duties. Space Needle moved for summary judgment, arguing Pyro was an independent contractor, Space Needle did not retain control or supervision over the job, and the danger posed by the moving elevators was open and obvious. The trial court granted Space Needle's summary judgment motion. On appeal, the Court of Appeals affirmed in part and reversed in part, holding Space Needle did not owe Kamla a common law duty of care based on retained control or a duty of care under RCW 49.17.060, and holding a genuine issue of fact remained as to whether Space Needle owed Kamla a common law duty of care based on Kamla's status as an invitee. Kamla v. Space Needle Corp., 105 Wash.App. 123, 19 P.3d 461 (2001).

ANALYSIS

Common Law Duty of Care Based on Retained Control
We first address whether the Court of Appeals correctly determined Space Needle did not retain the right to direct Kamla's work sufficient to bring it within Washington's "retained control" exception to the general rule of nonliability for the injuries of independent contractors. The common law has long distinguished between an employer's liability for work-related injuries suffered by independent contractors and an employer's liability for work-related injuries suffered by its employees. The scope of an employer's liability depends on whether the worker is an independent contractor or an employee.
An "independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Restatement (Second) of Agency § 2(3). On the other hand, employees are "agent[s] employed by [an employer] to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the [employer]." Restatement (Second) of Agency § 2(2). The difference between an independent contractor and an employee is whether the employer can tell the worker how to do his or her job. Employers are not liable for injuries incurred by independent contractors because employers cannot control the manner in which the independent contractor works. Conversely, employers are liable for injuries incurred by employees precisely because the employer retains control over the manner in which the employee works. Kamla *475 contends Space Needle retained control over the manner in which he worked and is liable for his injuries under the common law "retained control" exception.
In the past, we have stated, "[t]he test of control is not the actual interference with the work of the subcontractor, but the right to exercise such control." Kelley v. Howard S. Wright Constr. Co., 90 Wash.2d 323, 330-31, 582 P.2d 500 (1978). Kamla argues Space Needle's common law liability under the "retained control" exception is controlled by this statement. Space Needle argues that Washington courts have modified Kelley such that the bare right to control is no longer enough to strip away the common law liability insulation. We must determine whether we have abandoned, or should now abandon, Kelley's "retained control" analysis in favor of an "actual control" analysis.
Space Needle cites Smith v. Myers, 90 Wash.App. 89, 95, 950 P.2d 1018 (1998), and argues Kelley's "right to control rule" no longer controls. In Smith, the court held, "[t]he `retained control' exception applies ... only when one who engages an independent contractor retains actual control over the workplace and affirmatively assumes responsibility for project safety." Smith, 90 Wash. App. at 95, 950 P.2d 1018 (citing Hennig v. Crosby Group, Inc., 116 Wash.2d 131, 134, 802 P.2d 790 (1991); Straw v. Esteem Constr. Co., 45 Wash.App. 869, 874, 728 P.2d 1052 (1986); Bozung v. Condo. Builders, Inc., 42 Wash.App. 442, 445-46, 711 P.2d 1090 (1985)). Hennig, Straw, and Bozung, however, do not support Space Needle's argument or the holding in Smith.
In Hennig, the plaintiff was injured when a three pound screw fell 60 feet onto his head. Hennig, 116 Wash.2d at 132, 802 P.2d 790. The plaintiff sued his employer (the independent contractor), the pin manufacturer, and the Port of Seattle. The contract under which the Port of Seattle hired the independent contractor authorized the Port of Seattle "to inspect [the independent contractor's] work to ensure that it fully complied with the contract provisions." Hennig, 116 Wash.2d at 134, 802 P.2d 790. We held the authority to merely inspect the work and demand contract compliance was not "retained control" sufficient to strip away the common law liability insulation:
It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the performance of the work as to undertake responsibility for the safety of the independent contractor's employees. "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship."
Hennig, 116 Wash.2d at 134, 802 P.2d 790 (quoting Epperly v. City of Seattle, 65 Wash.2d 777, 785, 399 P.2d 591 (1965)).
Neither Straw nor Bozung, two Court of Appeals opinions also cited by Smith, alter our common law liability exception. The Straw court merely held that controlling the timing of construction did not amount to controlling the performance of the work. Straw, 45 Wash.App. at 875, 728 P.2d 1052. The Bozung court simply held that such "general contractual rights as the right to order the work stopped or to control the order of the work or the right to inspect the progress of the work do not mean that the general contractor controls the method of the contractor's work." Bozung, 42 Wash.App. at 447, 711 P.2d 1090.
These decisions represent a straightforward application of the Restatement Second of Torts § 414 cmt. c (1965):
[T]he employer must have retained at least some degree of control over the manner in which the word is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
We cannot accept Space Needle's implicit invitation to abandon the "retained control" *476 inquiry. When we distill the principles evident in our case law, the proper inquiry becomes whether there is a retention of the right to direct the manner in which the work is performed, not simply whether there is an actual exercise of control over the manner in which the work is performed.
Space Needle did not retain the right to interfere with the manner in which Pyro completed its work, nor did Space Needle affirmatively assume responsibility for workers' safety. Space Needle simply agreed to provide Pyro a suitable display site and fallout zone, access to the display site to set up the display, adequate crowd control, firefighters, and permit fees. Space Needle also agreed to provide "Access to the site; Technical assistance and support; Security and fencing as determined by the Seattle Fire Department; Public broadcast, [and]; Public relations." Clerk's Papers at 330. Space Needle did not retain control over the manner in which Pyro installed the fireworks display or completed its work. As an independent contractor, Pyro was free to do the work in its own way. We hold Space Needle did not owe a common law duty of care based on retained control and is, therefore, not liable for Kamla's injuries.

Statutory Duty of Care of Jobsite Owner
Kamla argues Space Needle owed him and breached a duty of care under WISHA. Space Needle argues it did not owe him a statutory duty of care because Space Needle did not exercise control over the manner in which Pyro completed its work.
In Washington, all general contractors have a nondelegable specific duty to ensure compliance with all WISHA regulations. Stute v. P.B.M.C. Inc., 114 Wash.2d 454, 464, 788 P.2d 545 (1990). The Stute court imposed the per se liability as a matter of policy: "to further the purposes of WISHA to assure safe and healthful working conditions for every person working in Washington." Stute, 114 Wash.2d at 464, 788 P.2d 545. This expansive liability is justified because "[a] general contractor's supervisory authority is per se control over the workplace." Stute, 114 Wash.2d at 464, 788 P.2d 545.
The court of appeals has extended Stute's nondelegable duty of ensuring WISHA compliant work conditions to parties other than general contractors. In Weinert v. Bronco Nat'l Co., 58 Wash.App. 692, 795 P.2d 1167 (1990), Bronco, an owner/developer, hired a contractor to install siding. The contractor, in turn, subcontracted with Adrey Construction, by whom Weinert was employed. Weinert, 58 Wash.App. at 693, 795 P.2d 1167. After Weinert fell off scaffolding erected by Adrey Construction, he sued Bronco arguing Bronco owed him a specific duty to comply with WISHA regulations.
Holding Bronco could be liable, the Court of Appeals pointedly noted, "Stute ... rejected the contention that before [the specific] duty could be imposed, there must be proof the general contractor controlled the work of the subcontractor." Weinert, 58 Wash.App. at 696, 795 P.2d 1167. The Weinert court acknowledged Bronco was an owner/developer rather than a general contractor, but employed the Stute rule because "[t]he owner/developer's position [was] so comparable to that of the general contractor in Stute that the reasons for the holding in Stute [applied]." Weinert, 58 Wash.App. at 696, 795 P.2d 1167.
The appellate courts extended the Stute rule to jobsite owners in Doss v. ITT Rayonier Inc., 60 Wash.App. 125, 803 P.2d 4 (1991). In Doss, ITT Rayonier hired an independent contractor to clean a boiler at one of its mills. A chunk of slag fell and killed a worker employed by the independent contractor. The deceased worker's estate sued ITT Rayonier, alleging it violated a specific WISHA provision. As in Weinert, the Court of Appeals correctly noted that Stute "rejected a claim that [the specific] duty ... attached only if the general contractor controlled the work of the subcontractor." Doss, 60 Wash.App. at 128, 803 P.2d 4. The court noted ITT Rayonier was a jobsite owner and not a general contractor, but found "no significant difference ... between an owner-independent contractor relationship and a general contractor-subcontractor relationship." Doss, 60 Wash.App. at 127 n. 2, 803 P.2d 4.
*477 Our first question is whether jobsite owners are per se liable under the statutory requirements of RCW 49.17.060. They are not. Nothing in chapter 49.17 RCW specifically imposes a duty upon jobsite owners to comply with WISHA. The second question is whether jobsite owners play a role sufficiently analogous to general contractors to justify imposing upon them the same nondelegable duty to ensure WISHA compliance when there is no general contractor. We hold they do not.
We discussed the nature of a general contractor's authority in Stute. We recognized a general contractor has authority to influence work conditions at a construction site. Stute, 114 Wash.2d at 461, 788 P.2d 545. We noted other jurisdictions have held since a general contractor controls the property and working conditions, "the general contractor will have the duty to provide for safety." Stute, 114 Wash.2d at 462, 788 P.2d 545 (citing Shannon v. Howard S. Wright Constr. Co., 181 Mont. 269, 593 P.2d 438 (1979)). Finally, we relied in part on a California Supreme Court decision that imposed "responsibility for safety requirements on those who have the greater practical opportunity and ability to insure compliance with safety standards." Stute, 114 Wash.2d at 462, 788 P.2d 545 (quoting Alber v. Owens, 66 Cal.2d 790, 796-97, 59 Cal.Rptr. 117, 427 P.2d 781 (1967)). Because a general contractor is in the best position, financially and structurally, to ensure WISHA compliance or provide safety equipment to workers, we place "the prime responsibility for safety of all workers ... on the general contractor." Stute, 114 Wash.2d at 463, 788 P.2d 545. The same is not true of jobsite owners.
Although jobsite owners may have a similar degree of authority to control jobsite work conditions, they do not necessarily have a similar degree of knowledge or expertise about WISHA compliant work conditions. Jobsite owners can run the gamut from an owner/developer with the same degree of knowledge about WISHA compliant work conditions as that of a general contractor to a public corporation without any knowledge about WISHA regulations governing a specific trade. Because jobsite owners may not have knowledge about the manner in which a job should be performed or about WISHA compliant work conditions, it is unrealistic to conclude all jobsite owners necessarily control work conditions. Instead, some jobsite owners may reasonably rely on the contractors they hire to ensure WISHA compliance because those jobsite owners cannot practically instruct contractors on how to complete the work safely and properly.
If a jobsite owner does not retain control over the manner in which an independent contractor completes its work, the jobsite owner does not have a duty under WISHA to "comply with the rules, regulations, and orders promulgated under [chapter 49.17 RCW]." RCW 49.17.060(2). As we already discussed, Pyro was an independent contractor. Space Needle did not retain the right to control the manner in which Pyro and its employees completed their work; it simply hired the independent contractor and owned the jobsite where Pyro worked. We hold Space Needle is not liable under WISHA for the manner in which Pyro and its employees completed their work.

Common Law Duty of Landowner to Invitee
The Court of Appeals reversed the trial court and held a reasonable trier of fact could find Space Needle was negligent in operating the elevators. We disagree.
The legal standard applicable to this issue is well settled. The "legal duty owed by a landowner to a person entering the premises depends on whether the entrant [is] a trespasser, licensee, or invitee." Iwai v. State, 129 Wash.2d 84, 90-91, 915 P.2d 1089 (1996). Employees of independent contractors hired by landowners are invitees on the landowners' premises. Meyers v. Synd. Heat & Power Co., 47 Wash. 48, 91 P. 549 (1907); Epperly v. City of Seattle, 65 Wash.2d 777, 786, 399 P.2d 591 (1965).
We have adopted sections 343 and 343A of the Restatement Second of Torts to define a landowner's duty to invitees. Iwai, 129 Wash.2d at 93, 915 P.2d 1089:

*478 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
Restatement Second of Torts § 343. Space Needle argues because the danger was known and obvious, it is not liable for Kamla's injury. But this argument ignores section 343A, which we also cited in Iwai:
"A possessor of land is not liable to his [or her] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."
Iwai, 129 Wash.2d at 94, 915 P.2d 1089 (alteration in original) (quoting (emphasis added) Restatement (Second) of Torts § 343A).
A landowner is liable for harm caused by an open and obvious danger if the landowner should have anticipated the harm, despite the open and obvious nature of the danger. Properly framed, the question in this case is whether Space Needle should have anticipated Kamla's harm, despite the obvious hazard posed by the moving elevators. The trial court dismissed this claim on summary judgment, stating, "the defendant is not liable for plaintiff's failure to avoid an open, obvious potential hazard about which he was aware and warned." Clerk's Papers at 607.
We review summary judgment orders de novo and will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998). We view the evidence and draw reasonable inferences in a light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). Under the facts in the record, Space Needle was entitled to judgment as a matter of law.
Pyro was a business entity that represented itself as possessing expertise in the creation and execution of fireworks displays. Collectively, the project team for Pyro had over 100 years of experience in designing, installing, and executing fireworks displays. Pyro created similar displays at the Space Needle the two previous years and suggested to Space Needle that it incorporate the 200-foot level into the 1997 New Year's Eve display. Kamla worked for Pyro in the core of the Space Needle the two previous years. Pyro employees who worked in the core were exposed to and aware of the danger posed by the moving elevators. Finally, Pyro employees had independently devised a safety system designed to avoid the elevator openings.
Given Pyro's expertise, Kamla's two years of personal experience working on the 200-foot level next to the obvious danger posed by the elevators, and Kamla's own acute awareness of the danger posed by the moving elevators, we believe no reasonable trier of fact could find Space Needle should have anticipated that Kamla would drag his safety line across the open elevator shaft. Therefore, we reverse the Court of Appeals on this point and affirm the trial court's ruling.

CONCLUSION
Common law liability for injuries to independent contractors and their employees exists where control is retained over the manner in which the work is completed. Because Space Needle did not retain control over the manner in which Pyro completed its work, Space Needle is not liable to Pyro or its employees for workplace injuries incurred because of the manner in which the work was completed. Furthermore, as a jobsite owner, Space Needle is not similar enough to a general contractor to justify imposing the same nondelegable duty of care to ensure WISHA compliant work conditions. Finally, given the professed expertise of Pyro, and Kamla's own work experience at the Space Needle, Space Needle had no duty to anticipate the harm that befell Kamla.
*479 The Court of Appeals is affirmed in part and reversed in part; the trial court is affirmed on all claims.
ALEXANDER, C.J., SMITH, MADSEN, SANDERS, BRIDGE and OWENS, JJ., concur.
CHAMBERS, J. (dissenting).
I dissent. We are given an opportunity to remedy the confusion in defining a principal's duty to the employees of an independent contractor in the context of jobsite injuries. The confusion lies not in the answers developed by the common law, but instead in the way the courts have been posing the questions. Unfortunately, reliance on out-of-context language in our seminal cases, Kelley v. Howard S. Wright Construction Co., 90 Wash.2d 323, 582 P.2d 500 (1978) and Stute v. P.B.M.C., Inc., 114 Wash.2d 454, 788 P.2d 545 (1990), without further analysis has spawned confusion in the law.
This Court has considered specific iterations of this problem, but has yet to develop a comprehensive approach. In Kelley we analyzed the duties a general contractor owed the employees of subcontractors, and concluded the general contractor had a nondelegable duty to provide a safe jobsite for all employees. Kelley, 90 Wash.2d at 330, 334, 582 P.2d 500. In Stute, we analyzed the duty of a general contractor to enforce Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW, work safety regulations and concluded that the general contractor bore the primary duty for enforcement of specific safety regulations. Stute, 114 Wash.2d at 457, 788 P.2d 545. Underlying Kelley and Stute is the principle that our law attempts to place the duty of reasonable care on the entity best suited to meet it. Unfortunately, case law has drifted from this fundamental principle. Formalistic reliance on Kelley and Stute outside the context of general contractors has led us astray. Kelley and Stute apply this fundamental underlying principle of the common law and demonstrate the important interplay between duty, the identity of the principal, the alleged dangerous activity or condition, and the nature and scope of the right of control retained by the principal.
Properly read, our case law establishes a multiple step analysis to determine whether the principal has an enforceable duty of care toward the employees of independent or subcontractors. First, we ask if the principal is a jobsite owner. If so, it has the duty of every landowner to every invitee, reasonable care to protect from knowable dangers, including obvious dangers if the principal should anticipate that mere knowledge is not sufficient to protect the invitee. The bare fact that a claimant can be classified as the employee of an independent contractor does not relieve the principal of the duty of reasonable care as a landowner.[1]
If invitee analysis does not resolve the issue, we turn to the second question: whether the principal, as a general contractor or owner has a nondelegable duty to provide a safe workplace to ensure compliance with specific safety regulations. See Kelley, 90 Wash.2d at 334, 582 P.2d 500; Stute, 114 Wash.2d at 457, 788 P.2d 545. A business owner may have functionally equivalent duties to a general contractor for the purposes of this analysis. See Phillips v. Kaiser Aluminum & Chem. Corp., 74 Wash.App. 741, 750-51, 875 P.2d 1228 (1994).
If the principal is solely an owner and not a general contractor we proceed to the third question: what is the nature of the activity or condition alleged to have caused the injury? If the claimant contends the acts or omissions of the principal or its agents caused the injuries, we analyze the principal's duty under standard common law tort principles.
If, however, the alleged cause of injury is a dangerous or defective condition on the *480 premises, we turn to the fourth question: whether the condition was within the province of the principal and existed completely independent of the work of the contractor. If so, we should ask again whether it should best be analyzed under the duty to invitees or under standard negligence principles.
Finally, if the alleged dangerous activity or condition was caused solely by the act or omission of the independent contractor, we recognize that generally there is no liability on the part of the principal:
Except as stated in [Restatement (Second) of Torts §§ ] 410-429 [ (1965) ], the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.
Restatement (Second) of Torts § 409 (1965), cited with approval in Kelley, 90 Wash.2d at 330, 582 P.2d 500; Hansen v. Horn Rapids O.R.V. Park, 85 Wash.App. 424, 429-30, 932 P.2d 724 (1997). It is only at this point, and not at the beginning of the analysis as some courts would have it, that the principal's retained right of control enters the legal framework. The principal has a duty to act with reasonable care within the scope of any retained control over the contractor's work. Restatement, supra, § 414. Therefore, even if the alleged dangerous condition was created solely by the independent contractor, the principal may still have liability so long as the condition was within the scope of the principal's retained right of control.
Whether the principal has an enforceable duty under its retained right of control depends on two factors. First, whether some right of control was retained by the principal. See Restatement, supra, § 414; Hennig v. Crosby Group, Inc., 116 Wash.2d 131, 133-34, 802 P.2d 790 (1991). Second, whether the alleged dangerous activity or condition was within the retained right of control. See Restatement, supra, § 414. "In other words, the premises owner's duty of care is commensurate with the control it retains over the independent contractor's work." Bright v. Dow Chem. Co., 1 S.W.3d 787, 790 (Tex.App.1999). To determine this, we must examine whether the specific condition or activity that caused the injury was within the scope of the retained control. See Kelley, 90 Wash.2d at 330, 582 P.2d 500; Doss v. ITT Rayonier, Inc., 60 Wash.App. 125, 130, 803 P.2d 4 (1991).
The relationship between the scope of the right of retained control and the dangerous condition is critical, especially in the context of the retained right of control of the premise owner. See generally Phillips, 74 Wash.App. at 743, 875 P.2d 1228 (summary judgment for principal reversed when principal's foreman supervised the cutting of heavy aluminum "bus" with chain saw furnished by principal; aluminum bus became unstable and fell on worker; principal retained sufficient control for exception to attach); Hennig, 116 Wash.2d 131, 802 P.2d 790 (affirming dismissal of suit against premises owner when a 3 pound screw pin fell 60 feet from a crane solely operated by the independent contractor); Epperly v. City of Seattle, 65 Wash.2d 777, 778-80, 399 P.2d 591 (1965) (affirming dismissal of wrongful death suit against premises owner when a large pad eye "designed, fabricated and installed" by the independent contractor failed and permitted a cable to fall); Shingledecker v. Roofmaster Prods. Co., 93 Wash.App. 867, 971 P.2d 523 (1999) (principal owed no duty to the employee of a supplier who rotated his conveyor into high voltage power lines while delivering materials to the jobsite before the principal was present or had started the job). Unfortunately, many courts have gone about this determination backward; they have first analyzed whether actual control was retained by the principal, without looking at whether the particular risk was within the right of control retained. See, e.g., Smith v. Myers, 90 Wash.App. 89, 950 P.2d 1018 (1998).
With this step by step analytical framework in mind, I will examine the facts and contentions raised by Jeff Kamla and The Space Needle Corporation (Space Needle).

FACTS
For several years, the Space Needle hired Pyro Spectaculars (Pyro) to provide fireworks for New Year's Eve celebrations; Kamla had worked all of these shows. In 1997, the Space Needle allowed Pyro to *481 install fireworks on the 200 foot level for the first time. The 200 foot level is a hexagonal platform through which the Space Needle's three elevators pass. There are no guardrails or other barriers around the elevator openings. The use of the 200 foot level presented the new danger of elevators, controlled by the Space Needle, moving through the work area.
The danger of the moving elevators was obvious to everyone. Because the Pyro employees faced the danger of falling, after several discussions between Pyro and the Space Needle, they secured safety lines at strategic secure points on the 200 foot platform. The Space Needle knew workers with safety lines attached to harnesses would be working near moving elevators, but the elevators continued to run through the work area at their normal operating speeds. No fall protection was provided, nor was any mechanism employed to prevent the elevators from striking workers or their equipment. A few minutes after Kamla came on duty, he accidentally dragged his safety line over the elevator shaft. As one of the elevators descended, it snagged Kamla's safety line and yanked him 45 feet down though the elevator opening, injuring him severely. The Department of Labor and Industries examined the work area after Kamla's fall and found four safety standard violations, including the running of the elevators through an active work site. Pyro was cited and fined.
After Kamla's fall, the Space Needle hired a safety consultant. On the consultant's recommendation, the Space Needle parked its elevators in the opening of the 200 foot level to prevent the elevators from striking anyone or anything and to prevent anything from falling through the elevator shafts during the remainder of Pyro's work. Kamla sued the Space Needle alleging that it had breached its duty to provide a safe workplace.

ANALYSIS
Kamla ultimately developed three theories of liability: (1) the Space Needle's duty to Kamla as an invitee to exercise ordinary care not to cause him injury, (2) the "right of retained control," and (3) the duty to comply with specific WISHA regulations. These contentions will be examined in order. Evidentiary issues will then be examined.

Common Law Duty to Invitees
Kamla argues that the Space Needle breached its common law duty of care to invitees. I agree with the majority that Kamla was an invitee. See Iwai v. State, 129 Wash.2d 84, 90-91, 915 P.2d 1089 (1996); accord Meyers v. Syndicate Heat & Power Co., 47 Wash. 48, 55, 91 P. 549 (1907). Further, I agree with the majority that the proper analysis is laid out by Restatement (Second) of Torts §§ 343, 343A (1965). Finally, I agree that the mere obviousness of the danger does not exculpate the Space Needle. Iwai, 129 Wash.2d at 94, 915 P.2d 1089.
I must part company with the majority, however, because it chooses to focus on only one aspect of invitee liability. The majority determines that, as a matter of law, the Space Needle could not have anticipated that the obviousness of the danger was not enough to protect Kamla. This mistakes the gravamen of Kamla's invitee theory that the Space Needle endangered Kamla by its own affirmative acts. "An owner who employs an independent contractor is already liable to all third persons, including employees of the independent contractor, for his or her own negligence, for negligence in the hiring of the independent contractor and for injuries resulting from any latent defects on the land." Tauscher v. Puget Sound Power & Light Co., 96 Wash.2d 274, 281-82, 635 P.2d 426 (1981).[2] Kamla contends, and a jury could conclude, *482 that Kamla was injured by the Space Needle's own negligence. The Space Needle controlled and operated the elevator on a normal schedule and at normal speeds while people were working on the 200 foot level. The Court of Appeals was correct in concluding that the "Space Needle owed Kamla a duty of care to keep the premises reasonably safe and to avoid endangering Kamla by its own negligence or affirmative acts." Kamla v. Space Needle Corp., 105 Wash.App. 123, 135, 19 P.3d 461 (2001). Kamla's claim that the Space Needle failed to take adequate steps to ensure that its elevators would not cause harm should go to a jury.
I disagree with the majority that the obviousness of the danger exculpates the Space Needle from a duty of care. A property owner's duty to an invitee is not always discharged merely because a warning is shouted or the danger is obvious. See Iwai, 129 Wash.2d at 94, 915 P.2d 1089; see also Thorpe v. Boeing Co., 5 Wash.App. 706, 708, 490 P.2d 448 (1971). The rule is more subtle than that. "`A possessor of land is not liable to his [or her] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" Iwai, 129 Wash.2d at 94, 915 P.2d 1089 (alteration in original) (emphasis added) (quoting Restatement (Second) of Torts § 343A (1965)). It is a question of fact whether the Space Needle should have anticipated the harm despite the obviousness of moving elevator cars.
This case is not significantly different from cases where we have found liability on the part of a railroad, despite the obvious danger presented by a moving train. When trains injure people on a railroad right-of-way our inquiry goes further than whether the hazards of railroads are obvious. If the claim is that the claimant tripped upon the tracks, then the railroad has no liability. See, e.g., Gaeta v. Seattle City Light, 54 Wash.App. 603, 774 P.2d 1255 (1989) (denying recovery where a motorcycle tire caught in obvious tracks on Seattle City Light's road over Diablo Dam). However, if the railroad knowingly operated its train through an area known to be congested with people, the fact that the train created an obvious hazard would not prevent us from requiring the railroad to take reasonable precautions to protect persons who might go upon the tracks. See, e.g., Hewitt v. Spokane, Portland & Seattle Ry., 66 Wash.2d 285, 402 P.2d 334 (1965) (holding that where a railroad crossing is extra hazardous, special precautions must be employed to guard against foreseeable accidents). Such precautions might include erecting stop signs, crossing gates or other appropriate barriers, and warning of oncoming trains with a whistle.
The danger posed by the moving elevator was completely within the control of the Space Needle. At oral argument below, the Space Needle correctly conceded that the obviousness of the danger did not eliminate its common law duty of care. The majority improperly weighs the evidence. Majority at 16. This should be left for the trier of fact. We should reverse and remand for trial on this theory.

Retained Control Exception
I stress my agreement with the majority. The majority quite rightly rejects the Space Needle's invitation to abandon our "right of retained control" test in favor of an "actual control" test. Majority at 475. I also agree with the majority that a principal who engages an independent contractor is not generally liable for injuries to the employees of the independent contractor. Tauscher, 96 Wash.2d 274, 635 P.2d 426. Generally, imposing liability would be inequitable and in violation of the fundamental principles articulated above because the principal lacks the right and the power to control how the independent contractor performs the work. Hennig, 116 Wash.2d at 133-34, 802 P.2d 790 (citing Epperly, 65 Wash.2d at 785, 399 P.2d 591). An exception exists, however, "where the employer of the independent contractor... retains control over some part of the work. The [employer] then has a duty, within the scope of that control, to provide a safe place of work." Kelley, 90 Wash.2d at 330, 582 P.2d 500; accord Bozung v. Condo. Builders, Inc., 42 Wash.App. 442, 446, 711 P.2d 1090 (1985); Restatement (Second) of *483 Torts § 414 (1965); W. Page Keeton et al., Prosser and Keeton on Torts § 71, at 510 (5th ed.1984). If the Space Needle retained the right of control, and if Kamla can establish that the mechanism of injury was properly within this retained right of control, summary judgment was improper. The heart of Kamla's retained control claim is that the Space Needle retained the right of control over the operations of the elevators and, within that control, had a duty to make the 200 foot level safe while Pyro employees performed their work. I find he has established this connection sufficient to overcome summary judgment.
Rather than ask whether, in some global sense, the Space Needle retained the right of control, we should ask a more pointed question: whether the Space Needle retained the right to control the condition or activity alleged to have caused injury. I therefore turn to the mechanism of injury to determine if it properly falls within the scope of the performance of the work (in this case, under the control of Pyro, and therefore engendering no liability for the Space Needle) or a condition of the premises (in this case, under the control of the Space Needle, and therefore potentially engendering liability). Such a distinction may not always be easy, though in this case it is comparatively straightforward. For example, if Kamla had been injured by an explosive provided solely by Pyro, and managed solely by Pyro, the scope of control inquiry would be focused on the performance of the work and the condition of the premises. Unless specific facts (e.g., a contract which required the Space Needle to provide for the safety of the workers) pointed to retained right of control, the principal would have no liability. Here the alleged dangerous condition relates to a condition of the work site and the failure to provide protective barriers, so our scope of retained control inquiry must focus on the elevators.
Within the scope of that limited control, the Space Needle had a duty of care. Accord Phillips, 74 Wash.App. at 751, 875 P.2d 1228; Greenleaf v. Puget Sound Bridge & Dredging Co., 58 Wash.2d 647, 652, 364 P.2d 796 (1961) (finding the common law duty was breached by failing to provide proper lighting); Doss, 60 Wash.App. at 130, 803 P.2d 4 (holding that summary judgment was improper because the common law duty might have been breached by failing to provide a safety net above the worker to guard against falling slag). The Space Needle retained sufficient control to prevent the specific risk from ripening to injury, and within the scope of that control, failed to provide a safe workplace. Summary judgment was improper.
Further, the Space Needle had some control over the manner in which work was performed.[3] The Space Needle met with Pyro employees several times to discuss safety issues, and specifically discussed the risks associated with moving elevators. These facts show that the Space Needle retained considerable right to control the work. The majority cuts too fine the control that must be retained; the control exerted is sufficient under these facts to defeat summary judgment.

Statutory Duty
The trial court dismissed any claim based on the Space Needle's duty to comply with WISHA, and the Court of Appeals affirmed. The Court of Appeals reasoned that actual control over the job or jobsite was required, and that mere right of control was not sufficient to trigger statutory duties. Kamla, 105 Wash.App. at 133, 19 P.3d 461. The court below applied the wrong analytical approach.
This Court has never analyzed the duty of a principal, other than a general contractor, to enforce WISHA regulations for the employees of others. We therefore must determine what is required to trigger a jobsite owner's duty to comply with WISHA *484 regulations; a question of first impression at this court.
WISHA defines the general safety standards:
Each employer:
(1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees...
(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.
RCW 49.17.060. This Court has found that the statute creates two different categories of duties; the general duty to safeguard an employer's own employees from recognized hazards, RCW 49.17.060(1), and the specific duty to comply with all WISHA rules, regulations, and orders, running to all employees on a jobsite including the employees of independent contractors, RCW 49.17.060(2); Stute, 114 Wash.2d at 457, 460, 788 P.2d 545. General contractors have a duty to comply with "pertinent" and "particular" WISHA safety regulations not only because of the express statutory direction, but also because the innate supervisory authority of a general contractor places it in the best position to ensure compliance. Stute, 114 Wash.2d at 456, 460-61, 788 P.2d 545. The Court of Appeals has quite properly held that for the same policy reasons, if a jobsite owner exercises the "requisite degree of control over the work," then it will be responsible for ensuring compliance with pertinent and particular WISHA regulations. Kennedy v. Sea-Land Serv., Inc., 62 Wash.App. 839, 854, 816 P.2d 75 (1991); Doss, 60 Wash.App. at 128-29, 803 P.2d 4; Weinert v. Bronco Nat'l Co., 58 Wash.App. 692, 696, 795 P.2d 1167 (1990). The general RCW 49.17.060 duty to furnish a workplace "free from recognized hazards," on the other hand, runs only to the employer's own employees. Our case law does not make clear whether that "requisite degree of control" is the same as under the "retained right of control" discussed above.
Under WISHA, "[t]he term `employer' means any person ... or other business entity which engages in any business ... in this state and employs one or more employees." RCW 49.17.020(4). "The term `employee' means an employee of an employer who is employed in the business of the employer ... and every person in this state who is engaged in the employment of or who is working under an independent contract the essence of which is his personal labor for an employer." RCW 49.17.020(5).
When we read the statutory definition along side our case law, the first question becomes whether the Space Needle is an "employer." The claimant must establish that the principal (1) has a business, (2) employs at least one employee, and (3) (for our purposes) conducts business on the premises. RCW 49.17.020; Stute, 114 Wash.2d at 460-61, 788 P.2d 545. The Space Needle is an employer within this definition. It conducts business and it employs employees on the premises. In passing, I note that this statutory definition of employer excludes homeowners not conducting business on the premises. Accord Smith v. Myers, 90 Wash.App. 89, 950 P.2d 1018 (1998); Rogers v. Irving, 85 Wash.App. 455, 933 P.2d 1060 (1997); see also Restatement (Second) of Torts § 413 cmt. f (1965), quoted with approval in Kennedy, 62 Wash.App. at 854, 816 P.2d 75.
Only after determining whether the jobsite owner is an "employer" in terms of WISHA do we turn to whether the duty to comply with specific WISHA regulations runs to the employees of the independent contractor. What regulations are pertinent and particular will vary. Relevant to this inquiry will be whether the principal is able and competent to enforce WISHA compliance given its experience, training, or supervision of the work. There will be hard cases requiring us to develop more nuanced rules, but this case does not present a perplexing issue at the edges of the doctrine. The Space Needle conducts its business on the premises, it controls the premises, and it is already obligated to comply with all pertinent and particular WISHA regulations. This duty runs to all employees working on the premises. This question would be harder had Pyro been working off site, or if the Space Needle had cordoned off the 200 foot level for the exclusive use of Pyro, but we are not faced with *485 those questions today.[4] Pertinent WISHA regulations apply and summary judgment was improper on this claim. On remand, Kamla will have to establish that specific pertinent WISHA regulations were violated, and that the Space Needle exercised the requisite control over those sites and instrumentalities such that it comports with WISHA and our common law to place responsibility for compliance upon it.

Evidentiary Issues
Kamla submitted evidence that after the accident, the Space Needle stopped work at the 200 foot level, hired a safety consultant, and allowed the work to continue only after the site had been made safe. The Space Needle successfully moved to exclude this evidence. While not an issue before this Court, given my disposition of the substantive issues, I address this briefly.
Evidence of subsequent remedial measures is not admissible to prove negligence or culpability. ER 407. However, such evidence may be admitted for other purposes, including, critically, control. Id.
The Space Needle admitted control over the elevators, so the trial court excluded the evidence on the grounds that control was not in dispute. However, the issue is not control of the elevators, but who had control of the work site at the 200 foot level. The evidence should have been admitted for the purpose of determining whether the Space Needle had control over the work site, or any other proper, and controverted, matter. ER 407; Brown v. Quick Mix Co., 75 Wash.2d 833, 839, 454 P.2d 205 (1969) ("[E]vidence of subsequent repairs ... may be admitted for the limited purposes of showing dominion or control over the instrumentality."). Similarly, if relevant, evidence of subsequent repairs would be admissible for impeachment purposes, so long as such evidence was not used to establish negligence or culpability. See ER 407.

CONCLUSION
I would affirm the Court of Appeals in part and reverse in part, and vacate the trial court's order of summary judgment and remand for further proceedings. Therefore, I respectfully dissent.
IRELAND, J., concurs.
NOTES
[1] Because the common law claim speaks in terms of "landowners," this opinion will use the terms "landowner" and "jobsite owner" interchangeably.
[1] In the background is the property owner's common law duty to protect invitees from harm. See Iwai v. State, 129 Wash.2d 84, 93-94, 915 P.2d 1089 (1996) (quoting with approval Restatement (Second) of Torts §§ 343, 343A (1965)). Under Iwai and the Restatement, an owner has a duty to protect against harms either known or knowable through an exercise of reasonable care. Id. This duty persists even in the face of obvious risks if the owner should have anticipated "`harm despite such ... obviousness.'" Iwai, 129 Wash.2d at 94, 915 P.2d 1089 (quoting Restatement (Second) of Torts § 343A (1965)).
[2] In Hennig, we stated that the Port of Seattle "otherwise did nothing to affirmatively increase the risk." 116 Wash.2d at 134, 802 P.2d 790. See also Epperly, 65 Wash.2d at 787, 399 P.2d 591 ("the city did not supervise the activities of the workmen, did not furnish the appliance which failed and it did nothing affirmatively to increase the risk."). Because Kamla contends the affirmative acts of the Space Needle's own employees caused his injury, we should apply standard common law negligence principles. Because Kamla's common law duty to an invitee does not involve contentions that Pyro, the independent contractor, caused his injury, the principles of nonliability for the acts of independent contractors and the resultant retained-control analysis is unnecessary to analyze this theory.
[3] Whether a right to control has been retained depends on the parties' contract, the parties' conduct, and other relevant factors. In this case, it is undisputed that the Space Needle had the right and authority to control the work site. The test of control is not actual interference with the work of the subcontractor, but the right to exercise such control. Kennedy v. Sea-Land Serv., Inc., 62 Wash.App. 839, 851, 816 P.2d 75 (1991); Bozung, 42 Wash.App. at 446, 711 P.2d 1090. It is not enough that the principal/employer reserves the right to inspect for compliance with the contract. Hennig, 116 Wash.2d at 134, 802 P.2d 790.
[4] In this context, it may be more appropriate to ask whether an owner who conducts business on the premises has surrendered control of the work site.