[No. 63204-3-I.   Division One.   March 15, 2010.]

CHRISTOPHER E. NEIL, *as Guardian*, ET AL., *Appellants*, v. NWCC INVESTMENTS V, LLC, *Respondent*.

*Stanley J. Rumbaugh* and *John E. Wallace* (of *Rumbaugh Rideout Barnett & Adkins*) and *Betsy Rodriguez* (of *Law Office of Betsy Rodriguez PS*), for appellants.

*William W. Spencer* and *Jason E. Soderman* (of *Murray Dunham & Murray*), for respondent.

¶1 LEACH, J. — In Washington, general contractors have a nondelegable specific duty that extends to all employees on the jobsite to ensure compliance with regulations promulgated under the Washington Industrial Safety and

Health Act of 1973 (WISHA), chapter 49.17 RCW. Jobsite owners owe this same duty when they retain the right to control the manner in which the independent contractor and its employees perform their work. In this case, we are asked to decide whether NWCC Investments V LLC, an owner-developer, owed a statutory duty of care to Mariano Romero Romero, who sustained serious injuries on the jobsite as an employee of an independent contractor. Because NWCC Investments did not retain the right to control the manner in which Romero and his employer performed their work, NWCC Investments owed no duty to Romero to ensure WISHA compliance. We affirm.

## FACTS

¶2 Mark McDonald formed NWCC Investments for the purpose of acting as the building owner of phase five of a six-phase retail development project called Snoqualmie Ridge. He owned 99 percent of NWCC Investments, while Northwest Capital Corporation (NW Capital Corporation) owned the remaining one percent. McDonald was also the sole owner of NW Capital Corporation.

¶3 On October 4, 2005, NWCC Investments and B&B Equipment, Construction & Supply (B&B Construction) entered into a written contract (American Institute of Architects (AIA) Document A101-1997) for construction of Snoqualmie Ridge Retail, Phase V. The contract identified NWCC Investments as the "Owner" and B&B Construction as the "Contractor." McDonald and James Boyer Sr., the owner of B&B Construction, signed this contract. The contract incorporated an attached exhibit, titled "Construction Budget," that listed line items totaling $3,828,000, including $84,000 for "Supervision."[1] None of the documents between NWCC Investments and B&B Construction included in the record stated whether NWCC Investments retained control over construction means or contained

---

[1] McDonald testified at his deposition that NWCC Investments paid B&B Construction a flat rate of $7,000 per month for supervisory services.

any express provisions regarding compliance with safety measures.[2]

¶4 NWCC Investments and B&B Construction also orally supplemented the contract for Snoqualmie Ridge. NWCC Investments paid for the completion bond and liability insurance for B&B Construction and wages to B&B Construction personnel for hours worked, plus lodging, food, and fuel. In addition, NW Capital Corporation, or one of the limited liability corporations involved with earlier phases of construction of Snoqualmie Ridge, purchased approximately $80,000 in construction equipment, which was used by B&B Construction and subcontractors working on Snoqualmie Ridge. Finally, nearly all of the providers of supplies and materials delivered to the work site billed NWCC Investments directly. NWCC Investments paid these with no markup for B&B Construction.

¶5 On July 21, 2006, NW Capital Corporation contracted with Green Valley Drywall to perform drywall services on Snoqualmie Ridge. Boyer Sr., on behalf of NW Capital Corporation, and Sergio Blanco, the owner of Green Valley, signed the contract. Although NW Capital Corporation contracted with Green Valley, NWCC Investments paid the contract price directly to Green Valley.[3] The one-page contract between NW Capital Corporation and Green Valley did not contain any provisions regarding oversight of safety measures.

¶6 Green Valley then hired Romero. Green Valley paid his wages, and both Green Valley and B&B Construction supervised Romero's work on the jobsite. On February 17, 2007, Romero fell from a single wooden plank elevated about six to eight feet from the floor while taping drywall

---

[2] Although the NWCC-B&B contract adopted by reference General Conditions of the Contract for Construction, AIA Document A201-1997, this document was not made a part of the trial court record.

[3] NWCC Investments also directly paid all of the other subcontractors, with the exception of J&R Framing.

during construction of a restaurant at the site.[4] Romero was declared incompetent from the injuries sustained in the accident.

¶7 Romero's guardian and parents filed suit against B&B Construction and NWCC Investments, alleging that each had breached a nondelegable duty to establish and maintain a safe work site. NWCC Investments moved for summary judgment, claiming that it had no such duty because it had not retained control over the work performed by Green Valley. NWCC Investments supported its motion with B&B Construction's answers to interrogatories, the declaration of McDonald, and excerpts from the depositions of Boyer Sr. and Blanco. Plaintiffs filed a memorandum in opposition, supported by part of the contract between NWCC Investments[5] and B&B Construction, the contract between NW Capital Corporation and Green Valley, and excerpts from the depositions of McDonald, James Boyer Sr., and James Boyer Jr.

¶8 On March 2, 2009, the court entered an order granting NWCC Investments' motion, dismissing with prejudice all claims against NWCC Investments. The claims against B&B Construction were settled in mediation.

¶9 Romero's guardian and parents appeal the superior court's dismissal of their claims against NWCC Investments.

## STANDARD OF REVIEW

¶10 This court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.[6] Summary judgment is

---

[4] B&B Construction stated that none of its employees were working with Romero at the time of the accident.

[5] As noted previously, the record does not reflect that the trial court was provided with general conditions incorporated into the contract by reference.

[6] *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394, 823 P.2d 499 (1992).

appropriate when the pleadings, affidavits, depositions, and admissions indicate that no genuine issue of material fact is at issue and when reasonable minds can reach only one conclusion from the record.[7]

## ANALYSIS

¶11 Appellants argue that NWCC Investments owed Romero a statutory duty of care to ensure WISHA compliance. WISHA, which is codified at chapter 49.17 RCW, imposes both a general and specific duty on employers.[8] Under RCW 49.17.060, each employer

(1) [s]hall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees . . . and

(2) [s]hall comply with the rules, regulations, and orders promulgated under this chapter.

The first subsection, RCW 49.17.060(1), imposes a general duty on employers to protect their own employees from hazards not covered by specific safety regulations.[9] The second subsection, RCW 49.17.060(2), imposes a specific duty to comply with applicable WISHA regulations to protect all employees on the work site.[10] In this case, appellants invoke the second subsection, claiming that NWCC Investments had a duty to comply with applicable WISHA regulations to protect all employees, including Romero, on the work site.[11]

¶12 Washington courts have held RCW 49.17.060(2) imposes on general contractors a nondelegable specific duty to

---

[7] CR 56(c); *Butler*, 118 Wn.2d at 394-95.

[8] An "employer" is defined under RCW 49.17.020(4) as "any person . . . or other business entity which engages in any business . . . in this state and employs one or more employees."

[9] *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 457, 460, 788 P.2d 545 (1990).

[10] *Stute*, 114 Wn.2d at 457.

[11] After quoting the *Stute* court's analysis of RCW 49.17.060, appellants assert that NWCC Investments "in its legal capacity of general contractor, has the duties specified in Stute (supra) to ensure WISHA compliance on the construction site."

ensure WISHA compliance for the protection of all employees on the jobsite.[12] In *Stute v. P.B.M.C., Inc.*,[13] our Supreme Court explained the rationale for its policy decision to place this responsibility upon the general contractor: "[a] general contractor's supervisory authority places the general in the best position to ensure compliance with safety regulations."

¶13  Appellate courts have, in certain situations, applied the *Stute* rule to jobsite owners. For example, in *Weinert v. Bronco National Co.*,[14] the court acknowledged that Bronco was an owner-developer and not a general contractor but reasoned that the *Stute* rule applied because Bronco's position was "so comparable to that of the general contractor in *Stute*." The court pointed out that the basis for imposing the nondelegable duty to enforce WISHA compliance "exists with respect to an owner/developer who, like the general contractor, has the same innate overall supervisory authority and is in the best position to enforce compliance with safety regulations."[15]

¶14  But in *Kamla v. Space Needle Corp.*,[16] our Supreme Court held that the *Stute* rule does not apply per se to a jobsite owner, even when there is no general contractor. The court explained that while jobsite owners may have a similar degree of authority as general contractors, they do not necessarily control work conditions and may not be in the best position to enforce WISHA regulations:

> Although jobsite owners may have a similar degree of authority to control jobsite work conditions, they do not necessarily have a similar degree of knowledge or expertise about WISHA compliant work conditions. . . . Because jobsite owners

---

[12] *Stute*, 114 Wn.2d at 463-64.

[13] 114 Wn.2d 454, 463, 788 P.2d 545 (1990).

[14] 58 Wn. App. 692, 696, 795 P.2d 1167 (1990).

[15] *Weinert*, 58 Wn. App. at 696 (citing *Stute*, 114 Wn.2d at 463, 464).

[16] 147 Wn.2d 114, 123-24, 52 P.3d 472 (2002).

may not have knowledge about the manner in which a job should be performed or about WISHA compliant work conditions, it is unrealistic to conclude all jobsite owners necessarily control work conditions.[17]

Thus, the court declared that "some jobsite owners may reasonably rely on the contractors they hire to ensure WISHA compliance because those jobsite owners cannot practically instruct contractors on how to complete the work safely and properly."[18] The court then adopted the following rule: "If a jobsite owner does not retain control over the manner in which an independent contractor completes its work, the jobsite owner does not have a duty under WISHA to 'comply with the rules, regulations, and orders promulgated under [chapter 49.17 RCW].' "[19] Applying this rule, the court held that Space Needle was not liable to an independent contractor's employee because it did not retain the right to control the manner in which the independent contractor and its employees completed their work.

¶15 In sum, RCW 49.17.060(2) imposes a specific duty on employers to comply with applicable WISHA regulations to protect all employees on the work site. Under *Stute*, general contractors have a nondelegable duty to ensure WISHA compliance. This duty, however, does not extend to owners that do not retain the right to control the manner in which the independent contractor and its employees perform their work.[20]

¶16 The dispositive question, then, is whether NWCC Investments retained the right to control the manner in

---

[17] *Kamla*, 147 Wn.2d at 124.

[18] *Kamla*, 147 Wn.2d at 124-25.

[19] *Kamla*, 147 Wn.2d at 125 (alteration in original) (quoting RCW 49.17.060(2)).

[20] *Kamla*, 147 Wn.2d at 125; *Morris v. Vaagen Bros. Lumber*, 130 Wn. App. 243, 253, 125 P.3d 141 (2005); *Kinney v. Space Needle Corp.*, 121 Wn. App. 242, 248 n.12, 85 P.3d 918 (2004).

which Green Valley and Romero performed their work.[21] Appellants presented no evidence that NWCC Investments retained this right. In fact, the record indicates the contrary. In his declaration, McDonald stated, "I occasionally visited the jobsite . . . to check on the progress of the work. I never controlled the method and manner of the work being performed. I never supervised the work being performed." Blanco similarly testified at his deposition that he had spoken with McDonald only once and that McDonald had never told him how to perform any work.

¶17 McDonald further explained that B&B Construction was paid to perform as general contractor on the jobsite and was responsible for jobsite safety because he did not have any experience or specialized training in construction or workplace safety. Boyer Sr. confirmed in his deposition that B&B Construction was responsible for jobsite safety. And in answers to interrogatories, B&B Construction provided the following description of its general safety procedures at the jobsite:

> Safety meetings were held. Further, when employees of subcontractors could not speak English, Jose Valdiliez was used to translate safety instructions and safety practices while working on this job site. . . . In general, whenever Ron Schaefer, Jim Boyer, Sr., Jim Boyer, Jr., or Jose Valdiliez observed unsafe conduct of any kind by employees on the job site, they would either directly instruct the employee or the employee's supervisor on the unsafe working practice or condition.

B&B Construction also described specific safety instructions it provided to Romero:

> Romero was instructed on multiple occasions not to use "planks" to perform his drywall work. He was instructed to use the Baker's scaffolding or to use a ladder. The names [of] persons providing this instruction would include Jim Boyer, Sr., as well as Jose Valdiliez. Romero's own employer, Sergio

---

[21] Because we conclude that the duty to ensure WISHA compliance does not attach in this case, we need not address NWCC Investments' contention that it was not Romero's employer.

> Blanco, of Green Valley Drywall, presumably also provided training to Romero concerning the use of a ladder or scaffolding while working on interior halls and ceilings, as he was doing at the time of this accident in February, 2007.[22]
>
> . . . .
>
> The day of the accident, or perhaps the day before the accident, Jose Valdiliez recalls seeing plaintiff in the Thai restaurant standing on a plank performing certain drywall work and again advised Romero he could not use the plank, that it was unsafe, and that he needed to use either a ladder or the Baker's scaffolding, which was made available for his use by Jose Valdiliez.

Thus, the undisputed evidence shows that B&B Construction controlled Romero's jobsite performance and that NWCC Investments was solely concerned with contract compliance. Under these facts, the superior court properly dismissed the claims against NWCC Investments on summary judgment.

¶18 Appellants nonetheless contend that NWCC Investments owed Romero a statutory duty of care because it meets the definition of a "general contractor" under the contractor registration statute (CRA), chapter 18.27 RCW. Under RCW 18.27.010(5), a "general contractor" is defined as

> a contractor whose business operations require the use of more than one building trade or craft upon a single job or project or under a single building permit. A general contractor also includes one who superintends, or consults on, in whole or in part, work falling within the definition of a contractor.

Focusing on the definition's first sentence, appellants claim NWCC Investments is a general contractor with a non-delegable duty to ensure WISHA compliance because it employed more than one trade to work on Snoqualmie Ridge. Appellants further insist that this definition applies

---

[22] Blanco testified that he was familiar with the location where Romero was injured and that he supervised his employees and performed work in that particular area.

because no case or statute defines the term "general contractor" in the context of RCW 49.17.060 and that this is the only statutory definition of the term.

¶19 But nothing in the CRA specifically imposes this nondelegable duty on business entities falling under the statutory definition of a "general contractor." The legislature enacted the CRA to protect the public from unreliable, fraudulent, financially irresponsible, or incompetent contractors.[23] Under the act, all construction contractors are required to register with the Department of Labor and Industries.[24] To register, contractors must submit an application that satisfies certain general requirements.[25] In addition to the general requirements, contractors must file with the department a surety bond for $12,000 if a general contractor or $6,000 if a specialty contractor.[26]

¶20 Furthermore, specific provisions in the CRA affirmatively undermine appellants' argument. For example, the introduction to RCW 18.27.010 states, "The definitions in this section apply throughout this chapter unless the context clearly requires otherwise." In addition, RCW 18.27.090(11), which exempts from the chapter's registration requirements an owner who contracts for a project with a registered contractor, provides some evidence that the legislature did not intend to treat owners contracting with registered contractors the same as general contractors performing work for others. In this way, the exemption lends support to the policy driven distinction our Supreme Court made between owners and general contractors in *Kamla* and contrasts with the mechanical approach urged by appellants.

¶21 Finally, our courts have never interpreted the CRA as imposing a nondelegable duty to ensure WISHA compli-

---

[23] RCW 18.27.140.

[24] RCW 18.27.020(1).

[25] RCW 18.27.030.

[26] RCW 18.27.040(1).

ance. Appellants argue that *Hinton v. Johnson*[27] supports their position. That case involved a contract dispute between Hinton, an unregistered subcontractor, and Johnson, an owner-developer, and presented the question whether Johnson could assert the CRA as a shield barring Hinton's claims.[28] Finding that Johnson met the definition of "contractor" under the CRA and that he was not exempt from the act, this court held that the CRA did not bar Hinton's claims against Johnson.[29] Contrary to appellants' argument, nothing in *Hinton* addresses, let alone establishes, that a business entity meeting the CRA's definition of "general contractor" has a nondelegable duty to enforce WISHA regulations.[30]

¶22 In the alternative, appellants argue that NWCC Investments, through its agent, B&B Construction, acted in a manner similar enough to a general contractor to justify imposing a nondelegable duty to ensure WISHA compliance. In support of this argument, appellants cite *Combes v. Snow*[31] and point out that Boyer Sr. signed the contract with Green Valley on behalf of NW Capital Corporation, which owned one percent of NWCC Investments.

¶23 This agency argument fails since *Combes* is inapposite. There, two persons taking a car for a joyride without the permission of the owner were jointly and severally liable for injuries to a third person resulting from the driver's negligence because the passenger and driver were in joint possession of the car.[32]

---

[27] 87 Wn. App. 670, 942 P.2d 1061 (1997).

[28] *Hinton*, 87 Wn. App. at 672-73.

[29] *Hinton*, 87 Wn. App. at 675-76.

[30] The other two cases cited by appellants, *Weinert*, 58 Wn. App. 692, and *Husfloen v. MTA Constr., Inc.*, 58 Wn. App. 686, 794 P.2d 859 (1990), also do not stand for the proposition that the CRA imposes a nondelegable duty to ensure WISHA compliant work conditions. Both cases simply apply the *Stute* rule without discussing the CRA.

[31] 56 Wn.2d 122, 351 P.2d 419 (1960).

[32] *Combes*, 56 Wn.2d at 123, 126.

¶24 Furthermore, "[t]he relevant distinction between an agent and an independent contractor is whether the owner has 'the right to control the method or manner in which the work was to be done.' "[33] " 'Control is not established if the asserted principal retains the right to supervise the asserted agent merely to determine if the agent performs in conformity with the contract. Instead, control establishes agency only if the principal controls the manner of performance.' "[34] Here, uncontroverted evidence established that NWCC Investments' authority over B&B Construction was limited to contract compliance. Thus, while Boyer Sr. had the authority to enter into the contract with Green Valley on behalf of NW Capital Corporation, and NWCC Investments controlled budget-related matters, the means by which construction of phase five of Snoqualmie Ridge was to be completed remained within B&B Construction's control.[35]

## CONCLUSION

¶25 NWCC Investments did not retain the right to control the manner in which Green Valley and Romero performed their work. Accordingly, NWCC Investments did not owe Romero a nondelegable specific duty to enforce WISHA regulations. The superior court's judgment is affirmed.

DWYER, A.C.J., and BECKER, J., concur.

Review denied at 169 Wn.2d 1018 (2010).

---

[33] *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co.*, 125 Wn. App. 227, 236-37, 103 P.3d 1256 (2005) (quoting *Patent Scaffolding Co. v. Roosevelt Apartments, Inc.*, 171 Wash. 507, 510, 18 P.2d 857 (1933), *overruled on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988)).

[34] *Stansfield v. Douglas County*, 107 Wn. App. 1, 18, 27 P.3d 205 (2001) (internal quotation marks omitted) (quoting *Uni-Com Nw., Ltd. v. Argus Publ'g Co.*, 47 Wn. App. 787, 796-97, 737 P.2d 304 (1987)).

[35] *See Kelsey*, 125 Wn. App. at 237 (holding that a general contractor and independent project manager were independent contractors and not agents of the project's declarant because the declarant did not retain the right to control the means by which the general contractor and manager were to perform their work).