[No. 33129.   Department Two.   July 28, 1955.]

A. J. TURNBULL et al., Respondents, v. CLEO L. SHELTON, Appellant.[1]

[1]Reported in 286 P. (2d) 676.

*Velikanje, Velikanje & Moore* and *Paul M. Goode,* for appellant.

*Tunstall & Hettinger,* for respondents.

HILL, J.—This is a contract action; the problems presented have to do with agency.

Copartners hereinafter referred to as the respondents sued Cleo L. Shelton for $1,236, that being the amount of their bid, plus the sales tax, for laying 1040 square yards of asphalt paving on premises belonging to Shelton. The trial court concluded that there had been an express contract, and that, even if an express contract was not established, there had been such an unjust enrichment as would support a judgment on the theory of quasi contract. From a judgment against him, Shelton appeals.

Appellant was building an apartment house. Tom Sager, who supposedly had connections by virtue of which he could buy at lower prices than could the appellant, purchased materials, equipment, and fixtures for the appellant, and secured bids for some phases of the work, such as that performed by the respondents. In some instances, purchases and contracts were made in Sager's name. Ostensibly, Sager was from time to time a financier, a vendor of building materials, etc., an independent contractor, a joint venturer or partner. The trial court was not confused by these protean aspects and found that, in the transaction with which we are here concerned, Sager was at all times the agent of Shelton. Appellant states in his brief that, with the exception of a question of evidence,

" . . . all assignments of error are concerned with de-

termining the true relation between Tom Sager, or his corporation, Tom Sager and Associates, and Cleo Shelton."

Our own examination of the record satisfies us that the trial court was correct. While someone seeing only one segment of the Shelton-Sager operations or only the Sager activities might have been deceived thereby, the entire record definitely implies an agency relationship.

An implied agency is an actual agency and can be proved from facts and circumstances by deduction or inference; it is established by the words and conduct of the parties and by the circumstances of the particular case. *Sharpe Sign Co. v. Parrish* (1949), 33 Wn. (2d) 883, 207 P. (2d) 758; *Weller v. Speet* (1936), 275 Mich. 655, 267 N. W. 758.

In *Coombs v. R. D. Bodle Co.* (1949), 33 Wn. (2d) 280, 285, 205 P. (2d) 888, we quoted the following definition of "agency" from 1 Restatement, Agency 7, § 1 (1):

" 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' "

In *McCarty v. King County Medical Service Corp.* (1946), 26 Wn. (2d) 660, 681, 175 P. (2d) 653, Judge Connelly, speaking for the court, used the same definition, emphasizing that control of the conduct of the agent is a vitally essential element in the relationship of principal and agent. We expressly approve and adopt as a part of this opinion the portion of that opinion under law point No. 5, appearing on pages 680, 681.

The record supports the inference that the appellant consented that Sager should act for him, in his behalf and subject to his control, and that Sager consented so to act, in consequence thereof becoming a purchasing and contract procurement agent in connection with the construction of the apartment house, and that he was so acting in the transaction with which we are here concerned.

Appellant asked Sager to get bids for the asphalt paving. Sager contacted the respondents and presumably others,

and introduced respondent A. J. Turnbull to appellant. It was from appellant that Turnbull secured the information as to the work to be done on the basis of which he made his bid. Sager advised appellant that he had received three bids and that respondents were "low." Appellant directed Sager to request the respondents to go ahead with the job, and was present much of the time while the work was being done.

It is contended by appellant that a relationship of owner and independent contractor existed between Sager and himself. The principal bit of evidence relied upon to substantiate this contention is an agreement between appellant and Sager prepared in April, 1952, when the apartment house was almost completed, whereby the "Builder" (appellant) agreed to pay the "Contractor" (Sager), "at a rate not to exceed cost plus five (5%) per cent plus freight, if any of Contractor's cost," for the "materials, fixtures and equipment" purchased by him. Appellant and Sager are in disagreement as to the items on which the five per cent was to be paid, and there is no testimony that it was ever paid on any item.

The control exercised by appellant over the work performed and over Sager's purchases is inconsistent with any claim that Sager was an independent contractor. In *Losli v. Foster* (1950), 37 Wn. (2d) 220, 234, 222 P. (2d) 824, we quoted with approval the rule that marks the dividing line between an agent and an independent contractor, as stated in 2 Am. Jur. 17, Agency, § 8:

" 'An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in the performance of such contract, but only as to the result. A principal, on the other hand, has the right to control the conduct of an agent with respect to matters intrusted to him.' "

The transactions with which we are here concerned, except for the designation in the contract of April, 1952, are clearly on the principal-agent side of that dividing line. The fact that appellant and Sager referred to themselves in the

written agreement of April, 1952 (a patent afterthought), as "Builder" and "Contractor" is not determinative of their real relationship. *McCarty v. King County Medical Service Corp.*, *supra*; 1 Restatement, Agency 46, § 13, comment c.

Appellant contends further that, even if the relationship between himself and Sager was that of principal and agent, he cannot be held, because the respondents (1) chose to contract with Sager and (2) elected to extend credit to Sager alone, and such elections were binding on them. Supporting these contentions, appellant points to the facts that the account was set up in the respondents' books under the name "Tom Sager," all bills were sent to Sager and not to appellant, and the latter's name was not added to the account until Sager was in financial straits. As to the contention that the respondents contracted only with Sager and therefore cannot recover from the appellant, the latter cites *Barnett Bros. v. Lynn* (1922), 118 Wash. 308, 203 Pac. 387, and *Patent Scaffolding Co. v. Roosevelt Apartments* (1933), 171 Wash. 507, 18 P. (2d) 857. To sustain his position that, having elected to extend credit to Sager, the respondents cannot hold the appellant, he cites *Chapman v. Ross* (1929), 152 Wash. 262, 277 Pac. 854.

In both the *Barnett* and *Chapman* cases, there were formal written contracts, which is not the situation here, where a bid for asphalt paving on appellant's property was submitted and was accepted orally by Sager. Both the *Barnett* and *Chapman* cases emphasize that the election to contract with the agent was made with full knowledge of the facts and of the principal-agent relationship. That is not the situation here.

Appellant and Sager endeavored to give the impression that Sager was an independent contractor. Respondent Turnbull testified that he thought "some kind of partnership" existed between the two. He further testified that Sager's credit was "no good"; and, according to him, the reason the account was originally carried in the name of Sager, a fact on which appellant places great stress, was

that Sager had requested "that we [respondents] put the billing through him [Sager]." There is no reason to suppose that the respondents ever intended to contract solely with Sager, knowing that appellant owned the property and believing that Sager's credit was "no good."

The *Patent Scaffolding Co.* case, *supra*, seems to us to support the respondents rather than the appellant on two important issues. The defendant, the owner of an apartment house, sought to avoid liability on claims for materials and the use of plaintiff's machines, on the theory that the various claimants had contracted solely with the Huetter Construction Company as an independent contractor (which coincides with appellant's first contention in the present case). The court, after discussing the line of demarcation between agents and independent contractors, concluded that the Huetter Construction Company was the agent of the apartment house owner and not an independent contractor. Then, answering a contention that is also made in the present case (*i. e.*, that if there was an agency the principal was disclosed and the claimant, knowing the principal, elected to contract with the agent), this court said that the claimant was not charged with knowledge that an agency relationship existed between the apartment house owner and the Huetter Construction Company, and that the claimant had a right to rely upon their ostensible relationship (in that case, owner and independent contractor) and that such reliance would not bar an action against the principal after the actual agency relationship was discovered. All of this parallels the present situation and makes that case persuasive authority to support our holdings in this case.

We conclude that (1) Sager was appellant's agent and not an independent contractor, and that (2) the respondents did not know of the agency relationship at the time they submitted their bid and did the work. They dealt with Sager on the basis of the ostensible relationship between him and the appellant. (Whether this was independent contractor, as appellant contends, or some kind of a partnership, as respondent Turnbull testified he believed,

is immaterial, because when the respondents discovered the actual agency relationship they had a right to proceed against appellant as Sager's principal.)

Appellant further urges that Sager became involved in bankruptcy proceedings and his corporation, Tom Sager & Associates, Inc., became involved in a receivership, and appellant has already paid for the paving by either his settlement with the receiver or his settlement with the trustee in bankruptcy. The trial court, after commenting that there would be much merit in appellant's position if he had actually proved such payment, concluded that the

". . . testimony is entirely unconvincing and insufficient to establish, as a matter of fact, that the defendant [appellant] ever paid for the asphalt paving in any payment he made to either Sager, the receiver, or the trustee in bankruptcy."

With that statement we are in accord.

■ Appellant has also assigned error to the admission of certain testimony. Over objection, respondent Turnbull was permitted to testify:

"It was my understanding that while I did not know the exact situation that there was a connection between Tom Sager and Mr. Shelton, in my mind more or less of a partnership of some kind, an actual connection."

Immediately thereafter, appellant's counsel said, "I will withdraw my objection." The witness thereafter, no other question being interposed, added: *"In my mind, there was a connection between the two of them.* In fact, I don't believe I would have done the job—." (Italics ours.) Appellant's counsel interrupted: "All right, now, wait a minute, wait a minute, wait a minute, I will object to that."

From the record, we would assume that this latter objection was to the statement the witness started to make but did not finish, inasmuch as the italicized sentence was repetition of the earlier statement to which an objection had been withdrawn and counsel never asked for or received a ruling on his objection. Even if, as appellant contends, the objection was to the italicized sentence and could be construed

to include the grounds of the objection previously made, the error, if any, could not have been prejudicial because the more detailed statement, quoted above, was already in the record.

Having determined that the trial court was correct in concluding that there was an implied agency between appellant and Sager and that, consequently, there was a contract between appellant and respondents, it is unnecessary to consider the alternative cause of action based upon the theory of quasi contract and unjust enrichment.

The judgment of the trial court is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

