103 P.3d 1256 (2005)
KELSEY LANE HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation, Appellant,
v.
KELSEY LANE COMPANY, INC., a Washington corporation, Respondent, and
Does 1 Through 20, Defendants.
No. 53268-5-I.
Court of Appeals of Washington, Division One.
January 10, 2005.
*1258 Richard Harvey Levin, John Christian Siegel, Levin & Stein, Seattle, WA, Jerry Harvey Stein, Los Angeles, CA, for Appellant.
Jerret E. Sale, Deborah Lynn Carstens, Gregory A.V. Clark, Bullivant Houser Bailey, PC, Seattle, WA, for Respondent.
Andrew C. Cook, Building Industry Ass'n of Washington, Olympia, WA, for Amicus Curiae  Building Industry Association of Washington.
AGID, J.
A condominium homeowners association appeals a trial court's order dismissing its case on summary judgment. The association sued the condominium project's declarant after construction defects caused severe water damage to the condominium buildings. The association now argues the trial court erred by finding no genuine issue of material fact about the declarant's actual knowledge of the defects and by dismissing the case without considering claims that relied on a "should have known" standard. But no evidence suggests that the declarant had actual knowledge of the defects. And because a declarant need not include construction defects in its public offering statement and there is no evidence that the declarant breached its fiduciary duty while it controlled the homeowners association, the declarant may not be held liable under a "should have known" standard. We affirm.

FACTS
The Kelsey Lane condominium complex is located in Bellevue and consists of 40 units in nine buildings. In 1993, the condominium project's declarant, Kelsey Lane Company, Inc. (KLC), contracted with Sacotte Construction, Inc., to build the complex. KLC also hired Danali Management Corporation (DMC) as the independent project manager. DMC assigned its employee Allen Bayne to the project. By late 1994, construction was complete, and the City of Bellevue had issued final certificates of occupancy for all nine buildings.
In May 2002, during a routine inspection of the buildings' vinyl siding, inspectors found rot under the building envelope systems. Later that year, engineering investigators removed the siding in 20 locations and discovered that the required building paper was either missing or installed incorrectly in 75 percent of the exposed areas. They also discovered that flashing was missing or improperly installed in many locations. Because vinyl siding is not waterproof, building paper and flashing are installed to create a weather-resistant barrier between the siding and the wall sheathing and wood framing. When the building paper and flashing are missing or improperly installed, water penetrates the sheathing and framing and causes decay. According to the investigators, the water intrusion at Kelsey Lane was so bad that some walls were heavily decayed and in a state of imminent collapse. There was also a likely danger of mold contamination.
In July 2002, the Kelsey Lane Homeowners Association (Association) sued KLC *1259 for fraudulent concealment, misrepresentations and omissions in the public offering statement, breach of fiduciary duty, and violation of the Consumer Protection Act. In August 2003, the trial court dismissed all claims on summary judgment and denied the Association's motion for reconsideration. The Association appeals.

DISCUSSION
In reviewing a trial court's decision to grant summary judgment, we review questions of law de novo.[1] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[2] Absent a genuine issue of any material fact, the moving party is entitled to summary judgment as a matter of law.[3] Summary judgment is proper "only if reasonable persons could reach only one conclusion from all of the evidence."[4]

I. Fraudulent Concealment

The Association contends that KLC fraudulently concealed from prospective purchasers the fact that building envelope components were missing or improperly installed. To prove a fraudulent concealment claim, the Association must show: (1) there was a concealed defect in the residential building; (2) the builder knew of the defect; (3) the defect is dangerous to the purchaser's property, health, or life; (4) the purchaser was unaware of the defect and a reasonable inspection would not have disclosed the defect; and (5) the defect substantially reduces the property's value or defeats the transaction's purpose.[5] Here, KLC disputes the second factor, arguing that the Association failed to present evidence that KLC knew of the construction defects.
The Association responds that while KLC may not have known of the defects, Bayne (the independent project manager) and Sacotte (the general contractor) did, and their knowledge is imputed to KLC. To support this claim, the Association argues that the defects were exposed for a long time during the construction process, so Bayne and Sacotte had ample opportunity to notice them, the defects were numerous and obvious, and a professional with Bayne's experience "would undoubtedly have noticed" the defects. A construction expert, an architecture expert, and an engineering expert averred that any experienced construction professional on the condominium construction site would have clearly and obviously recognized the defects. But Bayne responded that he never observed the construction defects. And while Bayne was responsible for monitoring the budget and progress toward completion of the project, he was not charged with inspecting or approving any of the construction. In addition, he stated that he had little opportunity to observe the defects because he was on the site fewer than two hours per week. He also testified that the siding was installed as each building was completed, as quickly as possible once the building paper and flashing were installed. This decreased the likelihood that he would happen to be on the site when it was possible to notice the defects.[6]
Relying on Atherton Condominium Apartment-Owners Ass'n Board of Directors v. Blume Development Co.[7] and Norris v. Church & Co., Inc.,[8] the Association argues it has presented enough evidence to create a *1260 question of fact about whether Sacotte and Bayne knew of the defects. In Atherton, the Blume Development Company was the owner, developer, construction contractor, and vendor of a condominium complex. Three years after the condominiums' completion, portions of the exterior walls began to crack and fall off. The homeowners learned that instead of applying stucco to the exterior walls, Blume had used a stucco substitute that was not authorized by the plans and did not satisfy fire resistivity standards. The homeowners sued Blume, arguing that Blume's failure to disclose its departure from the plans and guidelines constituted fraudulent concealment. The Supreme Court held that the claim survived summary judgment because the evidence supported a reasonable inference that Blume knew it deviated from the approved plans by using the unapproved stucco substitute.[9]
In Norris, the homeowners purchased a newly-constructed home that Church built. When the windows and doors began to leak, Church advised the homeowners to clean their roof gutters and replace roofing tiles. But the areas continued to leak, causing extensive water damage throughout the home. The homeowners sued Church for fraudulent concealment. We held the case survived summary judgment because the homeowners produced sufficient evidence that Church actually knew of the defects. Specifically, Church testified that it was aware that subcontractors installed windows without leak-preventing material, that the siding was improperly in contact with the ground, and that the problems were readily apparent. In addition, the subcontracts did not call for material to properly seal the windows.[10]
We noted that because Church testified the problems were readily apparent, "the trier of fact could infer that [Church] must have known of the defects at the time of the construction."[11] The Association relies on this, arguing that because experts stated that the defects would have been readily apparent, a trier of fact could conclude that KLC, Bayne, or Sacotte knew of them. But in Norris, the defendant builder itself testified that the defects were apparent. Here, neither KLC, Bayne, nor Sacotte testified that the defects were apparent. Instead, an uninvolved party stated that the defects would have been apparent. This is an important distinction.
Unlike the evidence presented in Atherton and Norris, the Association's evidence only creates an issue of fact about whether Bayne and Sacotte should have known about the construction defects. Bayne stated that he was unaware of the defects, and Bayne's job duties did not include performing quality control. Moreover, the record contains no information relating to Sacotte. Viewing the evidence in the light most favorable to the Association, no evidence supports the claim that Bayne and Sacotte in fact knew of the defects. And speculation is insufficient to defeat summary judgment.[12]
But even if the Association's evidence created an issue of fact regarding Bayne's and Sacotte's actual knowledge, the Association's claim nevertheless fails because KLC did not actually know about the defects. The Association claims that because both Bayne and Sacotte were KLC's agents, their knowledge of the construction defects is imputed to KLC and thus the fraudulent concealment claim against KLC may go forward. Generally, an agent's knowledge is imputed to the principal if that knowledge is relevant to the agency relationship.[13] An agency relationship exists, expressly or impliedly, when one party acts under the direction and control of another.[14] An independent contractor *1261 is generally not considered an agent because the contractor acts in his own right and is not subject to another's control.[15] To determine whether an agency relationship exists, a court must look at the spirit of the agreement between the parties.[16] While the burden of establishing an agency relationship typically rests upon the party asserting its existence,[17] a party asserting its status as an independent contractor rather than an agent has the burden to show the parties' true relationship.[18] Agency is generally a question of fact reserved for a jury unless the facts are undisputed or permit only one conclusion.[19]
KLC argues that Sacotte and Bayne were not its agents because they were independent contractors. The contract between KLC and Sacotte states:
The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.[[20]]
The only exceptions to the contractor's total control over the project are: the contractor must obtain the owner's consent before awarding a subcontract for an amount that exceeds the budget; the owner may direct the date of commencement and substantial completion; the owner may direct a change in the work; and the owner may terminate the contractor for cause. The relevant distinction between an agent and an independent contractor is whether the owner has
the right to control the method or manner in which the work was to be done [.] ... if the construction company represented the will of the owner only as to the result of the work, and not as to the means by which it was to be accomplished, then the relation between the parties would be that of independent contractor.[[21]]
Here, while KLC retained the right to control some budget-related matters, the means by which the project was to be completed remained in Sacotte's control. We conclude that Sacotte was not KLC's agent and any knowledge of construction defects it may have had cannot be imputed to KLC.
Similarly, Bayne was an independent contractor who was not subject to KLC's control, and thus he was not its agent. KLC hired Bayne's employer, DMC, to act as an independent project manager for the project. Bayne was assigned to it, and his duties were to analyze bids, select a general contractor, negotiate contract terms, and participate in site meetings. He also continuously monitored the "budget, schedules, production achievement, changes of scope, claims for extras, and liaison with outside agencies." Bayne reviewed the contractor's progress claims and evaluated "work-in-place in relation to claimed progress." In his declaration, Bayne stated that KLC did not direct DMC in the methods or means of accomplishing its assignment, nor did it attempt to control the details of DMC's work.
*1262 As stated above, the Association has the burden of proving Bayne's status as an agent, but KLC has the burden of proving Bayne's status as an independent contractor.[22] KLC submitted Bayne's declaration in which Bayne stated that he was not under KLC's control or direction, and the Association submitted nothing to contradict this. The Association argues that Bayne's duties were virtually identical to those of Tom Sager, the owner's representative in Turnbull v. Shelton.[23] But in that case "[t]he record support[ed] the inference that the [owner] consented that Sager should act for him, in his behalf and subject to his control[.]"[24] The Association provides no evidence of a similar agreement in this case, and Bayne's evidence is all to the contrary. Bayne was not KLC's agent, and thus any knowledge that Bayne may have had cannot be imputed to KLC.[25]
For these reasons, we hold that the trial court did not err by dismissing the Association's fraudulent concealment claim on summary judgment.

II. Public Offering Statement

The Washington Condominium Act (WCA), chapter 64.34 RCW, protects condominium purchasers in part by requiring condominium declarants to submit public offering statements (POS)[26] that contain certain information enumerated in the statute.[27] A declarant is liable for any misrepresentations in or any omissions of material fact from the POS if it had actual knowledge or should have known of them in the exercise of reasonable care.[28]
In this case, the Association argues that KLC made misrepresentations in and omitted material facts from the POS by failing to disclose the construction defects. And because a declarant will be liable for misrepresentations or omissions about which it reasonably should have known, the Association argues that the trial court erred by dismissing the case on the ground that there was no evidence that KLC had actual knowledge of the construction defects.
Although the WCA does not require a declarant to disclose construction defects in the POS, the Association claims that certain statutory provisions impliedly require it. KLC disputes the Association's interpretation of the POS provisions and argues that the court need not adopt the Association's interpretation because the WCA already protects consumers from construction defects through its warranty provisions. We agree.
The interpretation of a statute and its implementing regulations is a question of law that we review de novo.[29] Our goal is to effectuate the Legislature's intent *1263 and purpose as it is expressed in the act.[30] In ascertaining legislative intent, we must look to the statutory scheme as a whole.[31] When interpreting a statute, we must first determine whether its language is ambiguous; that is, whether it is capable of more than one reasonable interpretation.[32] If the language is plain and unambiguous, we determine the statute's meaning from the statute itself.[33] But if it is ambiguous or unclear, we may look to legislative history to discern intent.[34]
The Association cites three WCA provisions to support its claim that a declarant must disclose construction defects in its POS. The first provision, RCW 64.34.410(1)(n), requires a POS to state "[t]he status of construction of the units and common elements, including estimated dates of completion if not completed[.]" This is not ambiguous, as it simply requires the POS to state the extent to which the project's construction is completed. The Association nevertheless argues that because the dictionary defines "status" as a condition, the statute requires information about the project's condition, including any construction defects. But the second clause of the provision, "including estimated dates of completion if not completed," indicates that the Legislature is referring to the construction's completion status, not to construction defects. The interpretation urged by the Association is awkward, at best, and we must interpret statutes in a way so as to avoid any "absurd or strained consequences."[35]
The next provision cited by the Association, RCW 64.34.410(1)(o), requires that the POS include the estimated current common expense liability for offered units. "Common expense liability" is liability for common expenses allocated to each condominium unit,[36] and "common expenses" are the association's expenditures or financial liabilities.[37] The requirement that a POS contain an estimated and current statement of common expenses is unambiguous, and is intended to give potential purchasers an accurate idea of what their homeowners association dues may be.[38] The Association nevertheless argues that a requirement to disclose all common expenses necessarily requires that the costs to repair construction defects be included. But the relationship between the estimated current common expense liability requirement and the duty to disclose construction defects is too tenuous to be a reasonable reading of the provision, particularly in view of the WCA's provisions providing warranties for construction defects.
Finally, RCW 64.34.410(2) requires the declarant to attach the association's current or proposed budget to the POS. The Association argues that KLC violated this provision by *1264 submitting a budget that misrepresented the dollar amounts necessary for repairing the defects and associated legal services. But for the same reason discussed in the context of the common expense liability provision, this is a strained interpretation that we reject.
The Association points out that the WCA is a consumer protection statute that imposes on all declarants the duty to act in good faith, and thus it would be sound public policy to require a declarant to include construction defects in its POS. But the WCA already protects consumers from construction defects through its express and implied warranty provisions.[39] And we may not interpret a statute in a way that renders another statutory portion meaningless or superfluous.[40] We hold that the POS provisions of the WCA do not require the disclosure of construction defects.
But even if KLC were liable for not disclosing construction defects in the POS, there is insufficient evidence to create an issue of material fact about whether KLC reasonably should have known about the construction defects.[41] As discussed above, while there may be evidence to support the inference that Bayne or Sacotte should have known of the defects, this knowledge may not be imputed to KLC. And although the Association's construction expert testified that the relevant standard of care requires developers to employ an experienced construction manager to regularly inspect construction quality, this standard is irrelevant in determining whether the owner violated the specific provisions of the WCA on which the Association relies.

III. Breach of Fiduciary Duty

A condominium's homeowners association is managed by a board of directors[42] which must always act on the association's behalf.[43] When the officers and members of the board are appointed by the condominium declarant (as opposed to being elected by unit owners), they have the duty to act with the care required of fiduciaries of the unit owners.[44] A fiduciary duty includes the duty to disclose material facts.[45] In this case, KLC controlled the homeowners association from its inception in May 1994 until it turned control over to the homeowners in January 1995. During the time it controlled the association, KLC owed a fiduciary duty to the unit owners.
The Association now argues that KLC, when it managed the homeowners association, had the duty to disclose information that it knew or should have known, and because it should have known of the construction defects, it breached its duty. In addition to the reasons discussed above for concluding KLC neither knew nor should have known of the defects, this argument has a more fundamental problem. The homeowners association was not created until the end of May 1994, and the siding was completed sometime in early April 1994. Therefore, KLC, in its capacity as a member of the homeowners association, could not have known about the defects since the defects were concealed before the association was formed. The Association presents no evidence to the contrary, and we conclude that there is no issue of fact about whether KLC breached its fiduciary duties. The trial court did not err by granting summary judgment.[46]
*1265 We affirm.[47]
WE CONCUR: APPELWICK, J., and ELLINGTON, A.C.J.
NOTES
[1] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[2] Mason v. Kenyon Zero Storage, 71 Wash.App. 5, 8-9, 856 P.2d 410 (1993).
[3] Condor Enters., Inc. v. Boise Cascade Corp., 71 Wash.App. 48, 54, 856 P.2d 713 (1993) (citing CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990)).
[4] Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992) (citing Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982)).
[5] Norris v. Church & Co., Inc., 115 Wash.App. 511, 514, 63 P.3d 153 (2002) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 524, 799 P.2d 250 (1990)).
[6] The evidence the Association presented relates primarily only to Bayne. The Association presented no evidence demonstrating that Sacotte knew of any of the construction defects.
[7] 115 Wash.2d 506, 799 P.2d 250 (1990).
[8] 115 Wash.App. 511, 63 P.3d 153 (2002).
[9] Atherton, 115 Wash.2d at 525, 799 P.2d 250.
[10] Norris, 115 Wash.App. at 515-16, 63 P.3d 153.
[11] Id. at 516, 63 P.3d 153.
[12] Sanders v. Woods, 121 Wash.App. 593, 600, 89 P.3d 312 (2004) (citing Suarez v. Newquist, 70 Wash.App. 827, 832, 855 P.2d 1200 (1993)).
[13] Goodman v. Boeing Co., 75 Wash.App. 60, 85, 877 P.2d 703 (1994) (citing Restatement (Second) of Agency § 268, comment c (1958)), aff'd, 127 Wash.2d 401, 899 P.2d 1265 (1995).
[14] Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 823, 685 P.2d 1062 (1984) (citing Matsumura v. Eilert, 74 Wash.2d 362, 444 P.2d 806 (1968)).
[15] Turnbull v. Shelton, 47 Wash.2d 70, 73, 286 P.2d 676 (1955) (citing 2 Am.Jur. 17, Agency, § 8), overruled on other grounds, Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988); Norwegian Danish Methodist Episcopal Church of Spokane Falls v. Home Tel. Co., 66 Wash. 511, 514, 119 P. 834 (1912) (citing City of Detroit v. Corey, 9 Mich. 165 (1861)).
[16] Patent Scaffolding Co. v. Roosevelt Apartments, 171 Wash. 507, 511, 18 P.2d 857 (1933) (citing Foster v. City of Chicago, 197 Ill. 264, 64 N.E. 322 (1902)), overruled on other grounds, Crown Controls, 110 Wash.2d 695, 756 P.2d 717.
[17] Hewson Constr., 101 Wash.2d at 823, 685 P.2d 1062 (citing Moss v. Vadman, 77 Wash.2d 396, 403, 463 P.2d 159 (1969)).
[18] Patent Scaffolding, 171 Wash. at 510, 18 P.2d 857 (citing Dishman v. Whitney, 121 Wash. 157, 162, 209 P. 12 (1922), modified, 124 Wash. 697, 215 P. 71 (1923)).
[19] Uni-Com N.W., Ltd. v. Argus Publ'g Co., 47 Wash.App. 787, 796, 737 P.2d 304 (citing Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc., 28 Wash.App. 669, 674-75, 626 P.2d 30, review denied, 95 Wash.2d 1027 (1981)), review denied, 108 Wash.2d 1032 (1987).
[20] (Emphasis added.)
[21] Patent Scaffolding, 171 Wash. at 510, 18 P.2d 857.
[22] Hewson Constr., 101 Wash.2d at 823, 685 P.2d 1062 (citing Moss, 77 Wash.2d at 403, 463 P.2d 159) (the burden of establishing an agency relationship typically rests upon the party asserting its existence); Patent Scaffolding, 171 Wash. at 510, 18 P.2d 857 (citing Dishman, 121 Wash. at 162, 209 P. 12, 29 A.L.R. 460) (a party asserting its status as an independent contractor rather than an agent has the burden to show the parties' true relationship).
[23] 47 Wash.2d 70, 286 P.2d 676 (1955), overruled on other grounds, Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988).
[24] Id. at 72, 286 P.2d 676 (emphasis added).
[25] The Association argues that, at the very least, the issue of whether Sacotte and Bayne were KLC's agents is a question of fact reserved for a jury. But the facts in this context are not disputed, and the construction contracts and Bayne's declaration are straightforward. Thus, determining whether there was an agency relationship in this context is more an issue of law than fact. See Uni-Com N.W., 47 Wash.App. at 796, 737 P.2d 304 (citing Bloedel Timberlands, 28 Wash.App. at 674-75, 626 P.2d 30) ("The existence of a principal-agent relationship is a question of fact unless the facts are undisputed.").
[26] RCW 64.34.405(1).
[27] RCW 64.34.410. For example, a POS must contain the condominium's name and address, the declarant's name and address, the management company's name and address, and the relationship between the declarant and the management company. RCW 64.34.410(1)(a)-(d).
[28] RCW 64.34.405(3).
[29] In re Impoundment of Chevrolet Truck, WA License # A00125A ex rel. Registered/Legal Owner, 148 Wash.2d 145, 154, 60 P.3d 53 (2002) (citing Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325, 646 P.2d 113 (1982), cert. denied, 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 954 (1983)).
[30] State v. Grays Harbor County, 98 Wash.2d 606, 608, 656 P.2d 1084 (1983) (citing In re Lehman, 93 Wash.2d 25, 27, 604 P.2d 948 (1980)).
[31] Auto. Drivers & Demonstrators Union Local No. 882 v. Dep't of Ret. Sys., 92 Wash.2d 415, 420, 598 P.2d 379 (1979) (citing Hartman v. Wash. State Game Comm'n, 85 Wash.2d 176, 532 P.2d 614 (1975)), appeal dismissed, cert. denied, 444 U.S. 1040, 100 S.Ct. 724, 62 L.Ed.2d 726 (1980).
[32] Edelman v. State ex. rel. Pub. Disclosure Comm'n, 116 Wash.App. 876, 882-83, 68 P.3d 296 (2003) (citing Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. for King County, 127 Wash.2d 759, 771, 903 P.2d 953 (1995)), aff'd, 152 Wash.2d 584, 99 P.3d 386 (2004).
[33] Grays Harbor County, 98 Wash.2d at 608, 656 P.2d 1084 (citing Lehman, 93 Wash.2d at 27, 604 P.2d 948; Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976)).
[34] Id. at 607-08, 656 P.2d 1084 (citing Whitehead v. Dep't of Soc. & Health Servs., 92 Wash.2d 265, 268, 595 P.2d 926 (1979); Ropo, Inc. v. City of Seattle, 67 Wash.2d 574, 577, 409 P.2d 148 (1965); Garrison, 87 Wash.2d at 196, 550 P.2d 7).
[35] State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987) (citing State v. Richardson, 81 Wash.2d 111, 499 P.2d 1264 (1972)).
[36] RCW 64.34.020(8).
[37] RCW 64.34.020(7).
[38] See Uniform Condominium Act § 4C103, comment 4. We may look to the Uniform Condominium Act's official comments in determining the Legislature's intent because the WCA substantially conforms to the UCA. Marina Cove Condo. Owners Ass'n v. Isabella Estates, 109 Wash.App. 230, 241, 34 P.3d 870 (2001) (citing RCW 64.34.950).
[39] See RCW 64.34.443, 64.34.445.
[40] Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (citing Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 810, 756 P.2d 736 (1988); Tommy P. v. Bd. of County Comm'rs, 97 Wash.2d 385, 391, 645 P.2d 697 (1982)).
[41] See RCW 64.34.405(3) (a declarant may be liable for misrepresentations in or omissions from the POS about which it should have known in the exercise of reasonable care).
[42] RCW 64.34.020(5).
[43] RCW 64.34.308(1).
[44] RCW 64.34.308(1)(a).
[45] Colonial Imports, Inc. v. Carlton N.W., Inc., 121 Wash.2d 726, 732, 853 P.2d 913 (1993).
[46] The Association also assigned error to the dismissal of its Consumer Protection Act claim. But the Association did not state the basis for this assignment of error, nor did it cite any legal authority. We thus consider this assignment of error waived. See Smith v. King, 106 Wash.2d 443, 451-52, 722 P.2d 796 (1986) (a party waives an assignment of error if it presents no authority or argument to support it).
[47] Because we affirm the trial court's summary judgment dismissal, we need not discuss KLC's statute of limitations or economic loss arguments.