# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DENNIS WILLHITE,<br><br>    Appellant,<br><br>    v.<br><br>FARMERS NEW WORLD LIFE<br>INSURANCE COMPANY, a<br>Washington corporation,<br><br>    Respondent,<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY, a corporation,<br><br>    Defendant. | DIVISION ONE<br><br>No. 71526-7-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: August 10, 2015 |

DWYER, J. — After his employment was terminated, Dennis Willhite filed suit against his former employer, Farmers New World Life Insurance Company (Farmers), claiming, among other things, that he had been fired in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, and the Washington Family Leave Act (WFLA), chapter 49.78 RCW. Farmers denied all of Willhite's claims and asserted counterclaims based on Willhite's refusal to return his severance benefits, including a counterclaim of unjust enrichment. Following discovery, Farmers moved for and was granted summary judgment on its unjust enrichment counterclaim. Subsequently, Willhite's remaining claims were tried to a jury. The jury returned a defense verdict and judgment was

entered against Willhite. Willhite now assigns error to the manner in which the trial court instructed the jury, certain evidentiary rulings made by the court, and the grant of summary judgment on Farmers' claim of unjust enrichment. Finding no error, we affirm.

I

Willhite began working at Farmers in 1978. He worked in the company's marketing department in Los Angeles. After several years in that position, he transferred to Farmers' Mercer Island office, where he took a position in the actuarial department. He later moved to "operations" before ultimately rejoining the marketing department.

At some point in 2008 or 2009, Willhite began experiencing symptoms of depression and anxiety. By 2010, his symptoms had grown worse and, in May of that year, Willhite was diagnosed with acute anxiety and depression by Dr. Luba Kihichak. Dr. Kihichak prescribed medication and counseling. Willhite sought counseling from Dr. Richard Wemhoff on several occasions.

Willhite requested short term disability leave from his job pursuant to both the Federal Family and Medical Leave Act (FMLA) and the WFLA. His request was approved by Liberty Mutual, a company which administered Farmers' leave policies, as well as its short and long term disability benefits plans. Liberty Mutual provided Willhite's medical records to its consulting physician, Dr. Laura Don, for review. Dr. Don initially concluded that Willhite's records did not support a finding of significant psychiatric impairment. However, after receiving additional records from Dr. Kihichak and Dr. Wemhoff, Dr. Don determined that

the information available to her supported a finding of "significant psychiatric impairment from 5/18/10-8/7/10."

Liberty Mutual notified Farmers that Willhite's request for FMLA leave had been approved due to Willhite's "serious health condition." However, Liberty Mutual did not share Willhite's medical records or Dr. Don's reports with Farmers.

Days prior to Willhite's leave request, his supervisor, Brian Fitzpatrick, had contacted Farmers' human resources (HR) department for guidance on disciplining Willhite. According to his supervisors, Willhite had not been performing his job in a satisfactory manner. HR advised Fitzpatrick to give Willhite a formal warning. However, because Willhite went on leave, Fitzpatrick did not take action at that time.

Willhite returned to work on August 12, 2010. He did not share with anyone at Farmers the reason for his leave of absence. Fitzpatrick met with Willhite shortly after he returned from leave. At that meeting, Fitzpatrick gave Willhite a written summary of job expectations; Fitzpatrick did not give Willhite a formal warning. By the middle of September, Fitzpatrick again felt that Willhite was not performing in a satisfactory manner.

In September, Farmers advised its managers of its decision to lay off 84 employees. Employee assessment scores were prepared by Farmers' managers, including Fitzpatrick, in preparation for the scheduled layoff. Willhite received low assessment scores. On November 10, 2010, Willhite's employment was terminated.

Willhite believed that his termination was age-related. He filed an age

discrimination claim with the Equal Opportunity Commission, which was transferred to the Washington State Human Rights Commission (HRC) for investigation. Angie Bechtel, a Farmers HR consultant, was charged with responding to the HRC investigation. By letter, Bechtel advised the HRC that Farmers had conducted an internal investigation regarding Willhite's termination and had determined that Farmers had complied with all state and federal laws against discrimination. Bechtel explained that Willhite had been terminated due to poor performance.

On July 13, 2012, Willhite filed suit against Farmers in King County Superior Court. He pleaded claims of breach of implied contract, violation of the WFLA, age discrimination, disability discrimination, breach of the implied covenant of good faith and fair dealing, and wrongful discharge in violation of public policy. Farmers removed the case to federal court on September 5. On March 29, 2013, Willhite filed an amended complaint in which he excised the allegation that his termination was motivated in part by Farmers' desire to reduce its pension obligation. On April 18, the case was remanded to King County Superior Court.

In its answer to the amended complaint, Farmers denied all of Willhite's claims; Farmers also asserted counterclaims based on Willhite's refusal to return his severance benefits, including a counterclaim of unjust enrichment. Following discovery, Farmers moved for summary judgment on all of Willhite's claims and on its counterclaims. Willhite moved for summary judgment on his breach of implied contract claim.

The trial court granted Farmers' motion with respect to Willhite's claims of age discrimination and wrongful discharge in violation of public policy, and granted Farmers' motion with regard to its unjust enrichment counterclaim. Summary adjudication as to the remainder of the claims was denied.

Willhite's remaining claims—disability discrimination, violation of the WFLA, and breach of contract—were tried to a jury. The jury returned a verdict in favor of Farmers. On January 13, 2014, the trial court entered judgment; on February 3, the court entered an amended judgment, in which it supplemented the judgment with an award of taxable fees and costs in favor of Farmers.

Willhite appeals both from the grant of summary judgment in favor of Farmers on its unjust enrichment claim, and from the jury verdict and judgment entered against him. However, his breach of contract claim is not at issue on appeal. Thus, the claims at issue are Willhite's claims of disability discrimination and violation of the WFLA, as well as Farmers' claim of unjust enrichment.

II

Willhite asks that we vacate the jury's verdict and either enter judgment in his favor or remand for a new trial. His request for relief is predicated, broadly speaking, on his position that the trial court failed to instruct the jury properly and prevented him from presenting to the jury important evidence in the form of exhibits and witness testimony. For the reasons given herein, we reject his contentions and deny him relief.

The WLAD makes "it . . . an unfair practice for an employer to refuse to hire, discharge, or discriminate in compensation based on a person's sensory,

mental, or physical disability." Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 144-45, 94 P.3d 930 (2004). The WLAD supports a cause of action for at least two different types of discrimination: (1) failure to accommodate, and (2) disparate treatment. Riehl, 152 Wn.2d at 145. Willhite alleges only disparate treatment. Thus, his claim is that Farmers "discriminated against [him] because of [his] condition." Riehl, 152 Wn.2d at 145.

In order to carry his ultimate burden of persuasion, Willhite was required to prove that "a discriminatory intent was a substantial factor" in Farmers' decision to terminate his employment. Riehl, 152 Wn.2d at 149. "A 'substantial factor' means that the protected characteristic was a significant motivating factor bringing about the employer's decision." Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). However, "[i]t does not mean that the protected characteristic was the sole factor in the decision." Scrivener, 181 Wn.2d at 444; see also Mackay v. Acorn Custom Cabinetry, Inc., 127 Wn.2d 302, 310, 898 P.2d 284 (1995) (rejecting the "determining factor" standard in favor of the "substantial factor" standard).

## A

Willhite asserts that the trial court erred in instructing the jury. According to Willhite, these were errors of both commission and omission. He is incorrect.

Jury instructions are sufficient if they permit each party to argue its theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. Leeper v. Dep't of Labor & Indus., 123 Wn.2d 803, 809, 872 P.2d 507 (1994). "When these conditions are met, it is not error to

refuse to give detailed augmenting instructions, nor to refuse to give cumulative, collateral or repetitious instructions." Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). Errors of law in jury instructions are reviewed de novo. Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995). A refusal to give a proposed jury instruction is reviewed for abuse of discretion. Boeing Co. v. Key, 101 Wn. App. 629, 632, 5 P.3d 16 (2000).

i

Willhite takes issue with the following instruction given to the jury: "Where an employer did not know or had no notice of an employee's disability, the employee's disability cannot have been a substantial factor in the employment decision." Jury Instruction 18. He contends that this instruction imposed an improper element of proof regarding his disability discrimination claim, given that his burden was to show that his disability was a "substantial factor" in Farmers' decision to end his employment.[1] Yet, Willhite acknowledges that "notice is inherent in the substantial factor question." This acknowledgment reveals Willhite's true position: namely, that Farmers had notice of his disability as a

---

[1] Citing CR 51(f), Farmers maintains that Willhite failed to preserve for appellate review all but one of the objections to the jury instructions he now raises on appeal. Farmers points to the repeated response of "no objection" given by Willhite's counsel—when, prior to instructing the jury, the trial court read each proposed instruction and invited the parties to state their objections on the record—as proof that Willhite failed to preserve for review all but one objection. However, the jury instructions had been the subject of extensive debate throughout the trial and each error alleged by Willhite on appeal was considered by the trial court. Given a similar situation, our Supreme Court "reviewed the trial record, found 'extended discussions' about the jury instructions, and determined that the trial court understood the nature of [the] objection." Washburn v. City of Federal Way, 178 Wn.2d 732, 747, 310 P.3d 1275 (2013) (discussing Crossen v. Skagit County, 100 Wn.2d 355, 359, 669 P.2d 1244 (1983)). In this matter, the trial court undoubtedly understood the nature of Willhite's objections, given the extensive argument presented before and during the trial. Accordingly, the issues were preserved for review.

matter of law.[2]

Willhite asserts that notice was established as a matter of law because the knowledge of Liberty Mutual was imputed to Farmers. Notice was imputed, he maintains, as a result of the agency relationship between Liberty Mutual and Farmers. In taking this position, Willhite assumes that which he was required to prove—that an agency relationship did, in fact, exist.

It was Willhite's burden to establish the existence of an agency relationship. Moss v. Vadman, 77 Wn.2d 396, 403, 463 P.2d 159 (1969). To do so, it was incumbent upon him to show a "manifestation of consent" by Farmers that Liberty Mutual would act on Farmers' behalf and subject to its control, "with a correlative manifestation of consent" by Liberty Mutual that it would act on behalf and subject to the control of Farmers. Moss, 77 Wn.2d at 403. "Agency is generally a question of fact reserved for a jury unless the facts are undisputed or permit only one conclusion." Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co., 125 Wn. App. 227, 236, 103 P.3d 1256 (2005). "To determine whether an agency relationship exists, a court must look at the spirit of the agreement between the parties." Kelsey Lane, 125 Wn. App. at 235-36.

Willhite never made a sufficient showing of agency in the trial court. Now, on appeal, he appears to assume that a contractual relationship is equivalent to an agency relationship. There is no basis in law for such an assumption. Kelsey

---

[2] In any event, we perceive Willhite's argument that notice is not a separate element of proof to be premised on a rhetorical preference that notice remain embedded within the "substantial factor" inquiry. This rhetorical preference does not entitle Willhite to appellate relief. Leeper, 123 Wn.2d at 809.

Lane, 125 Wn. App. at 235 ("An independent contractor is generally not considered an agent because the contractor acts in his own right and is not subject to another's control."). The cases relied upon by Willhite are not to the contrary. Goodman v. Boeing Co., 75 Wn. App. 60, 877 P.2d 703 (1994) (imputing knowledge where agency relationship was found to exist between contracting parties), aff'd, 127 Wn.2d 401, 899 P.2d 1265 (1995); Kimbro v. Atl. Richfield Co., 889 F.2d 869 (1989) (imputing knowledge where agency relationship was found to exist between supervisor and subordinate); Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 991 P.2d 1182 (2000) (ruling that a reasonable trier of fact could find that an employee's report of sexual harassment to her supervisor gave the employer constructive knowledge of the alleged sexual harassment). Consequently, Willhite is incorrect in asserting that Farmers had notice of his disability by virtue of maintaining an agency relationship with Liberty Mutual.[3]

Moreover, the knowledge of Liberty Mutual was not imputed to Farmers by operation of the WLAD. There is no indication in the WLAD that the legislature meant to prevent an employer from contracting with a third party to administer leave policies and disability benefit plans for employees. That is to say, the legislature did not make the duty to administer leave policies and disability

---

[3] Because of this, the trial court did not, contrary to Willhite's assertion, err in excluding the reports of Dr. Don. By Willhite's own admission, the viability of his position with regard to the trial court's ruling on these reports is premised upon the existence of agency relationship between Farmers and Liberty Mutual—a relationship that he failed to prove was in existence. Moreover, Farmers did not, contrary to Willhite's argument, waive its opportunity to object to these reports, as shown in Farmers' April 13, 2015 motion to either strike a portion of Willhite's reply brief or, alternatively, supplement the record, which we grant as to the alternative relief requested.

benefit plans for employees non-delegable.

It was incumbent upon Willhite to persuade the jury that Farmers was, in fact, on notice of his disability when it terminated his employment. As shown by the jury's response on the special verdict form, Willhite failed to do so. Consequently, the jury could not have found that Willhite's disability was a substantial factor in Farmers' termination decision.

ii

Willhite next takes issue with several proposed instructions that were not given to the jury. He contends that the trial court erred in declining to instruct the jury on (1) constructive notice, (2) disability related performance deficits and personality changes, and (3) circumstantial evidence. We disagree. The trial court did not err.

Willhite requested that the jury be instructed on constructive notice. The trial court rejected this request.

> THE COURT: What her argument is, if I understand it, is that you want to be able to argue that Farmers based its decision to terminate him on conduct resulting from his disability without notice that there was actually disability causing the conduct, and I don't think that's the law. That's the narcolepsy example, that's the guy sleeping at his desk all day. "He is asleep again. I told him not to sleep. I was going to fire him if he kept sleeping. You are fired. He never told me he had narcolepsy. If he had, we would have worked something out."
>
> . . . .
> THE COURT: That's constructive knowledge, that's—I'm not going so far as constructive knowledge, but if you can say that they actually knew that he had a disability, or that he had notice, they had notice of a disability, then, I think you are okay.

Willhite asserts that he was entitled to an instruction on constructive

notice. The Washington case he cites in an effort to support his assertion is inapposite, as it involved a "failure to accommodate" claim, see Sommer v. Dep't of Soc. & Health Servs., 104 Wn. App. 160, 15 P.3d 664 (2001),[4] and the federal cases he relies upon did not involve the WLAD, see Xin Liu v. Amway Corp., 347 F.3d 1125 (9th Cir. 2003), and Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001). No appellate relief is warranted.

Willhite proposed that the jury be instructed on disability related performance deficits and personality changes.

PLAINTIFF'S PROPOSED INSTRUCTION NO. 14

The law makes no distinction between conduct caused by a disability and the disability itself. As such, you may conclude that Willhite's disability was a "substantial factor" in Farmers' termination decision, if you find that the decision was based in part upon performance deficits, personality changes or other symptoms that were a result of Willhite's depression.

The first sentence of this proposed instruction was, in fact, included in jury instruction 18. While the second sentence was not, the trial court did not abuse its discretion by refusing to instruct the jury in this manner. This is so because the second sentence suggests that the jury could find that Willhite's disability was a substantial factor in Farmers' termination decision in spite of the fact that Farmers had no notice of such disability. Riehl and related authority, see, e.g., Hume v. Am. Disposal Co., 124 Wn.2d 656, 880 P.2d 988 (1994), Callahan v. Walla Walla Hous. Auth., 126 Wn. App. 812, 110 P.3d 782 (2005), do not support

---

[4] Willhite notes that "[i]n defining disability," courts "do not distinguish between claims based on disparate treatment and those alleging failure to accommodate." Callahan v. Walla Walla Hous. Auth., 126 Wn. App. 812, 820, 110 P.3d 782 (2005). This fact is irrelevant: the issue of notice is distinct from the issue of what constitutes a disability.

such a proposition. Instead, these decisions clarify that, where an employer is on notice of an employee's disability, the employee may not evade liability by explaining its termination decision in terms of the employee's poor performance.

Willhite, in two proposed instructions, requested that the jury be instructed that it could infer discrimination based on circumstances.

PLAINTIFF'S PROPOSED INSTRUCTION NO. 15

You may also consider the following when determining whether Willhite's disability was a substantial factor in Farmers' termination decision:

1) The proximity of time between the disability leave and the termination, as well as the years of employment prior to termination;
2) A prior history of satisfactory work performance.
3) Whether the performance evaluations upon which the termination decision was based contain subjective opinions, such as those assessing an employee's "dedication," or "enthusiasm."
4) Whether there was a drop in performance evaluation scores after the onset of the disability.

(Footnotes omitted.)

PLAINTIFF'S PROPOSED INSTRUCTION NO. 16

When determining whether disability was a substantial factor in the termination decision, you may also consider whether Farmers' offered explanations for the termination decision are: 1) inconsistent; 2) unworthy of belief; 3) unsupported by facts; or 4) affirmatively false.

If you disbelieve any of Farmers' offered explanation for Willhite's termination, you are entitled to infer discrimination from this evidence alone, and conclude that Willhite's disability was a substantial factor in Farmers' termination decision.

(Footnotes omitted.)

Both of these proposed instructions were, at best, detailed augmenting

instructions.[5] The trial court characterized them as more suitable for closing argument. Regardless, the court did not abuse its discretion in refusing to instruct the jury in this manner.

B

Willhite next contends that the trial court made a number of erroneous evidentiary rulings. However, the trial court did not abuse its discretion in making any of the challenged rulings.

The grant of a motion to exclude certain evidence "is addressed to the discretion of the trial court and should be reversed only in the event of abuse of discretion." Hizey v. Carpenter, 119 Wn.2d 251, 268, 830 P.2d 646 (1992). "'A trial court abuses its discretion when its decision or order is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons.'" Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012) (quoting Noble v. Safe Harbor Family Pres. Trust, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)). "An appellant bears the burden to prove an abuse of discretion." Hernandez v. Stender, 182 Wn. App. 52, 58, 321 P.3d 1230 (2014).

---

[5] Jury Instruction 4 provided for the following:
   The evidence that has been presented to you may be either direct or circumstantial. The term "direct evidence" refers to evidence that is given by a witness who has directly perceived something at issue in this case. The term "circumstantial evidence" refers to evidence from which, based on your common sense and experience, you may reasonably infer something that is at issue in this case.
   The law does not distinguish between direct and circumstantial evidence in terms of their weight or value in finding the facts in this case. One is not necessarily more or less valuable than the other.

Willhite asserts that the trial court abused its discretion in refusing to take judicial notice of an NIMH[6] report on depression that was offered by Willhite.[7] Yet, Willhite does not even suggest, let alone argue, that the NIMH report contains any "adjudicative fact." This alone makes his assertion untenable. See In re Disciplinary Proceeding Against Sanai, 177 Wn.2d 743, 753 n.3, 302 P.3d 864 (2013) ("ER 201(a) states that the 'rule governs only judicial notice of adjudicative facts,'" which are "'controlling or operative'" facts as opposed to "'background'" facts or, in other words, "'a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.'" (quoting BLACK'S LAW DICTIONARY 669 (9th ed. 2009))). The trial court properly rebuffed Willhite's attempt to put on expert testimony without actually calling such an expert to testify.

Willhite next asserts that the trial court erred in limiting the scope of Dr. Kihichak's testimony. He states that "Dr. Kihichak was prepared to testify that the skills measured by the Matrix[8] were compromised by Willhite's depression and anxiety." Yet, there is no indication in the record that Willhite ever made an offer of proof so as to inform the trial court that Dr. Kihichak would present such

---

[6] National Institute of Mental Health.

[7] This report purports to explain what depression is and identifies signs, symptoms, causes, and methods of treatment.

[8] This refers to the assessment score system used by Farmers in determining which employees to layoff in 2010.

testimony.[9] Unsurprisingly, therefore, the trial court did not rule on this issue. Consequently, there was no error.[10] See Kysar v. Lambert, 76 Wn. App. 470, 490-91, 887 P.2d 431 (1995); ER 103(a)(2) (error may not be predicated on ruling excluding evidence unless substance of evidence was made known to the court).

Willhite next asserts that the trial court erred in excluding the letter written by Angie Bechtel to the HRC. However, the record reveals that the trial court did not, in actuality, exclude the letter. Tellingly, Farmers did not seek to have the letter excluded. Instead, it moved to exclude "testimony and argument relating to Angie Bechtel's investigation of [Willhite's] . . . charge of age discrimination." When the trial court stated, "I'm essentially granting [the motion]," it was, at most, excluding testimony and argument relating to Bechtel's investigation. Thus, Willhite's claim of error fails because, contrary to his assertion, there was no trial court ruling on the admissibility of the letter.

We affirm the decisions of the trial court and the judgment entered on the jury's verdict.[11]

---

[9] In his disclosure of possible primary witnesses, Willhite limited his statement concerning Dr. Kihichak to this: "Responding party's treating physician and treated him for anxiety and depression and recommended medical disability leave."

[10] The point of contention between counsel for Farmers and counsel for Willhite in the trial court was whether Dr. Kihichack would be allowed to testify about depression in general, as opposed to the specific depression she observed in Willhite. (Farmers' motion in limine); (Willhite's response to motion in limine).

[11] Consequently, we need not and do not consider the trial court's rulings with regard to Willhite's testimony concerning damages.

III

Willhite contends that the trial court erred in granting summary judgment on Farmers' claim of unjust enrichment. Farmers brought a claim for unjust enrichment after Willhite accepted a severance package, yet failed to meet the condition for receiving the accompanying benefits: namely, agreeing to release Farmers of all claims. While Willhite's briefing on this issue is cursory and does not clearly indicate the theory upon which he relies, he appears to argue that the severance package represented compensation, meaning that he was entitled as a matter of law to receive it without needing to satisfy any preconditions. We decline to grant him appellate relief.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). A claim based on unjust enrichment requires proof of the following elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." Young, 164 Wn.2d at 484-85.

Willhite received a benefit from Farmers in the form of a severance package. This benefit was received at the expense of Farmers. Because receipt of the benefits was conditional and because Willhite failed to meet the condition—agreeing to release Farmers of all claims—it was unjust for Willhite to retain the benefits. Therefore, the trial court did not err in granting summary judgment in favor of Farmers.

Nevertheless, Willhite argues that the severance package represented compensation, citing to <u>Flower v. T.R.A. Industries, Inc.</u>, 127 Wn. App. 13, 34, 111 P.3d 1192 (2005). Yet, that case could only be of use to Willhite in the event that he had already established that he was entitled to the severance package as a matter of law. However, he points to no evidence that he was entitled to receive the benefits contained in the severance package. As a result, he has not shown that it was impermissible for Farmers to impose a condition on his receipt of the severance package. Because Willhite retained the benefit and did not satisfy the condition, he was unjustly enriched at the expense of Farmers. Summary judgment was properly granted in favor of Farmers.

Affirmed.[12]

We concur:

---

[12] Willhite requests an award of attorney fees and costs on appeal pursuant to RCW 49.60.030(2) and RAP 18.1. He admits that his entitlement to such an award is predicated on prevailing on his WLAD claim. He has not prevailed on his WLAD claim; thus, his request is denied.